# Olive E. Balch, Appellee, v. Edmund J. English and Mary Ann English, Appellants.

## Gen. No. 32,069.

1. GIFTS—*enforcement of rule as to degree of proof required.* The rule that a gift must be established by clear proof should be enforced where the alleged donor is dead and the rights of heirs and creditors are involved.

2. AGENCY—*revocation by death.* Where a daughter is given notes or mortgage bonds by her father for collection and to pay his bills with the proceeds, the agency ends with his death and no subsequent act of the daughter is binding upon his estate.

3. NEGOTIABLE INSTRUMENTS—*right of executrix to sue as owner in her individual name.* A daughter who receives stolen notes or mortgage bonds from her father has no right, after his death, to sue the maker in her own name as owner under the theory that the property passed to her as executrix of her father's estate and that it could not be claimed that she, as an individual, did not have the authority of the executrix to sue upon them in her own name.

4. NEGOTIABLE INSTRUMENTS—*right of legatee to sue as owner in her individual name.* A daughter who receives stolen notes or mortgage bonds from her father has no right, after his death, to sue the maker in her own name as owner under the theory that she has an equitable interest in the property as legatee, and that whether or not there is an equitable interest in others is no concern of the maker.

5. FORMER ADJUDICATION—*judgment for one not owning property as not bar to suit by legal representative of decedent.* Where a plaintiff sues the maker as the legal owner of notes and mortgage bonds that belong to the estate of a decedent, a judgment against the maker will not bar an action by the legal representative of the estate of the decedent.

6. PARTIES—*necessity that plaintiff be such as to make a recovery a bar to other action on same debt.* A defendant to an action has a right to require that there shall be such a plaintiff as will make the recovery a bar to any other action by another for the same debt.

Appeal by defendants from the Municipal Court of Chicago; the Hon. CHARLES F. MCKINLEY, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1927. Reversed. Opinion filed January 31, 1928.

DENT, DOBYNS & FREEMAN, for appellants.

GROSSBERG, LYON & BRILL, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

In the municipal court of Chicago, in an action of the first class, in a trial before the court without a jury, Olive E. Balch, plaintiff, obtained a judgment in the sum of $2,832.27 against Edmund J. English and Mary Ann English, defendants. This appeal followed.

The claim of the plaintiff was based upon five promissory notes or mortgage bonds of $500 each, all dated May 6, 1920, made by the defendants and payable to bearer or the registered owner on May 6, 1925, at the Reliance State Bank of Chicago, and secured by a trust deed on certain real estate. The plaintiff, in her statement of claim, alleges that she is the legal owner of the notes or mortgage bonds.

It is conceded that the Mayanlake Candy Company, located at 1110 West Lake street, Chicago, purchased the five notes or bonds in question on March 17, 1921, from the Reliance State Bank, and that the notes or bonds were placed in the company's safe, where they remained until January 27, 1924. On that date the company's office was burglarized, the safe blown up, and the notes or bonds in question—together with other property—stolen. The company notified the bank of the theft of the notes or bonds on the following morning and requested that payment on them be stopped. The candy company furnished a surety bond to the mortgagors, the defendants, indemnifying them in case the bonds were found; and collected from the bank the interest maturing on the coupons in May, 1924, November, 1924, and May, 1925, and the principal of the bonds at the date of the maturity, May, 1925. None of the coupons on the stolen notes or bonds were presented for payment, but the bonds, with only the final coupons attached, were presented to the bank

in May, 1926—a year after the notes or bonds matured. Payment on the notes or bonds was refused.

On the hearing of the cause the bonds were produced by the plaintiff and offered in evidence. The plaintiff testified that her father died March 28, 1925; that about two or three months before his death and just before he went to a hospital for an operation, "he had expended a lot of money before dying, for treatment, and he had used up quite a bit of ready cash, and he gave me the bonds in an envelope and told me to cash them. * * * I talked with Mr. Balch about it and he said there was no need to cash them because he had no idea my father was seriously ill as he was, and he asked me not to cash them, and he said put them away, and whatever money you need I will take care of that for you, which he did. I put them away before he died in my vault in the First Trust and Savings Bank Building"; and did not take them out until the latter part of April or the early part of May, 1926. "I had forgotten all about them. When I went to Europe I was very ill and when I came back I was very ill, and I never gave the bonds a thought until I was going to do some purchasing, and I ran short of money, and I asked Mr. Balch for some money, and he said to go down and get them and cash them and see what they are, and I went down and got them and took them to the bank, and that is when I heard they had been stolen"; that she returned from Europe in August, 1925; that the first time she ever saw the bonds was when she brought them home in the latter part of April or early part of May, 1926; that up to that time they were in a sealed envelope; that her father gave them to her in November, 1924; that they were in the envelope and she did not see them and she only knew what was in the envelope from what her father told her; that he said that they were some bonds that she could cash through Mr. Madsen; that he did not say what kind they were; that she did not

know what was in the envelope at any time until she opened it; that her father said they were five real estate bonds worth $500 a piece; that it did not occur to her that there might be interest due on the bonds until after she returned from Europe; that when her father gave her the bonds he was going to the hospital to be operated on; that ''he had been taking treatments for cancer for months and months, radium treatments, and they were very expensive, and I was taking care of the bills for him, I was paying the bills; and he was in no condition to take care of those things himself; * * * he was giving me money now and then to pay these bills; he was in no condition to take care of them for himself; I was taking care of all my father's affairs at that time''; that between the time he gave her the bonds and April or May, 1926, she went to the vault and opened her deposit box once or twice and saw the envelope there; that it was still sealed; that at the time her father gave her the envelope he also ''gave me $1,700 or $1,100,—I have forgotten. He gave me money at different times. I just can't recall the exact amount he gave me''; that her father left a will naming her as the executrix; that the estate was left to herself and brother; that her brother received $3,000 cash and she received the balance, $7,500 or $7,400; that she has been unable to find out, although she has tried every way, from whom her father got the bonds; that at the time her father gave her this envelope ''he didn't make any specific statements that it was a gift; he told me to take them and cash them and when I needed the money I should pay his bills. I had been taking care of these bills for his treatments; he had been giving me money, and I had been taking care of the bills for giving his treatments. * * * I was not paying his bills, but he was giving me money to pay the bills. I was not paying it out of my own pocket''; that she was acting as his agent; that ''he gave me the money to pay the expenses, and when the

money ran out he handed me some money in cash and some envelope''; that she never heard that the bonds were stolen until they were presented for payment in 1926. The plaintiff was the sole witness in her own behalf.

The defendants contend that the plaintiff proved by her own testimony that she had no title to the bonds and that they belonged to her father at the time of his death and belong now to his estate; that she was an agent, without interest, to collect the bonds and pay the bills of her father with the proceeds and that the death of her father put an end to the agency and that the plaintiff cannot maintain the present suit. The contention of the plaintiff is ''that the property in the bonds plainly passed from the father to the plaintiff in the father's lifetime.''

A gift must be established by clear proof. (*Wright v. Buchanan,* 287 Ill. 468, 478, and cases cited.) Certainly in a case where the alleged donor is dead, and the rights of heirs and creditors are involved, this rule should be enforced.

After a careful consideration of the evidence, we are satisfied that the notes or bonds (as between the plaintiff and her father) were the property of the father, and that the plaintiff had no interest in the same save that her father made her his agent for the purpose of collecting the bonds or notes and paying his bills with the proceeds.

''It is a well-established rule of the common law that the death of the principal puts an end to the agency when the authority is not coupled with an interest, and no act of agency subsequent thereto is binding upon the estate of the principal, for no one can do an act in the name of one who is dead.'' (1 Amer. & Eng. Encyc. of Law [2d Ed.], p. 1222. See also 2 Corpus Juris 546; *Risley v. Fellows,* 5 Gilm. [Ill.] 531; *Turnan v. Temke,* 84 Ill. 286; *Wallace v. Bozarth,* 223 Ill. 339, 342; *Garber v. Myers,* 32 Ill. App. 175; *Trubey v.*

*Pease,* 240 Ill. 513, 522; *Darr v. Darr,* 59 Iowa 81; *Triplett v. Woodward's Adm'r,* 98 Va. 187.)

Plaintiff further contends that "even if the property did not pass to the plaintiff she was executrix of her father's estate and it passed to her as executrix after his death, and anyone could have sued on them with her authority. It cannot be said that she, as an individual, did not have the authority of the executrix to sue upon them in her own name." It is a sufficient answer to this rather strained argument to say that the plaintiff in her statement of claim alleges that she is the owner of the notes or bonds, and the defendants in this proceeding have the right to question the legal right of the plaintiff to sue them for the reason that a judgment against them in the present case would be no protection in a suit filed by the legal representatives of the estate of the deceased.

The plaintiff further contends that she is a legatee of the deceased and has an equitable interest in the bonds, and whether or not there is an equitable interest in others is no concern of the defendants. In support of this contention the following cases are cited: *Richards v. Betzer,* 53 Ill. 466; *Lohman v. Cass County Bank,* 87 Ill. 616; *Hoff v. Dougherty,* 243 Ill. App. 159. These cases hold that the right of action upon a promissory note is in the person holding the legal title, notwithstanding the fact that another person may have an equitable interest therein, and that it is no concern of the maker that a third person holds an equitable interest in the note. None of these cases has any application to the facts of the instant one, and, as we have said before, the defendants have a right in this proceeding to protect themselves against the danger of two judgments against them.

In the present case the plaintiff is suing as the legal owner of the notes or bonds and the evidence shows clearly that she is not the owner of the bonds or notes and that the same belong to the estate of the deceased.

If the defendants were to pay the judgment in the present case, that fact would not bar an action by the legal representatives of the estate of the deceased. (*Garber v. Myers, supra.*) A defendant has a right to require that there shall be such a plaintiff as will make the recovery a bar to any other action by another for the same debt. (*Parks v. Brown,* 16 Ill. 454, 455.) We have heretofore referred in this opinion to the well-known rule of law that no act of agency subsequent to the death of the principal is binding upon the estate of the principal, for no one can do an act in the name of one who is dead. (See authorities cited.)

In the view that we have taken of this case it will not be necessary for us to pass upon several contentions raised by the defendants.

Holding, as we do, that the plaintiff has no right under the law and the evidence to sue the defendants in the present proceedings, the judgment of the municipal court of Chicago will be reversed.

*Reversed.*

BARNES, P. J., and GRIDLEY, J., concur.