Aleen B. Ragen, Appellant, v. Edward J. Bennigsen, Appellee.

Gen. No. 46,769.

First District, Second Division.
May 29, 1956.
Released for publication June 19, 1956.

356

Wisch and Crane, of Chicago, for appellant; James E. Brown, and Leonard Kravets, both of Chicago, of counsel.

Murphy, Pearson and O'Connor, of Chicago, for defendant-appellee.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

Judgment was confessed in favor of plaintiff in the amount of $38,322.22 on May 20, 1953 in the Superior Court of Cook county in an action based on a complaint and cognovit. Subsequently the defendant filed a motion and affidavit to vacate or open up the judgment, to which affidavit the plaintiff filed a reply, and on June 3, 1953 the court ordered that the judgment be opened, the cause be set for hearing and that the judgment stand as security. A hearing was had before the court and on May 26, 1955 the trial court sustained a motion of the defendant to find the issues for the defendant at the close of plaintiff's evidence, from which judgment this appeal is taken.

It appears from the evidence that the notes in question were executed by the defendant on December 27, 1941 and were delivered by him to James M. Ragen, Jr., together with a contract which related to the purchase of an interest in a partnership known as Gulf Stream Printers. In the complaint the plaintiff states that "the said James M. Ragen, Jr., for value received, afterwards negotiated the said notes by delivering the same to the plaintiff." On July 3, 1952 the plaintiff, Aleen B. Ragen, was divorced from James M. Ragen, Jr. and at some time close to that date an agreement between the Ragens with reference to property rights, with a list of assets attached, was executed.

In the affidavit of the defendant in support of his motion to open up the judgment, the defendant stated,

358

among other things, that on July 3, 1952 the plaintiff was divorced from the said James M. Ragen, Jr. On information and belief the defendant further stated that the plaintiff found the notes concerned herein in the personal belongings of James M. Ragen, Jr. and initiated a judgment by confession without any right, title or interest to the said notes. Defendant further stated that the plaintiff is not the bona fide owner and holder of the said notes; that at the time of the divorce the said James M. Ragen, Jr. filed a list of securities which formed a part of the divorce settlement; that "a review of said list of securities does not indicate that the affiant was indebted to said James M. Ragen, Jr."; that subsequently there was a complaint in the nature of a bill of review filed by the plaintiff in the Superior Court of Cook county to which was attached an exhibit A, "in which Exhibit was set forth the assets assigned by James M. Ragen, Jr.; that nowhere in said Exhibit does it appear that said notes were assigned to plaintiff." Defendant also alleged the defense of payment.

Plaintiff filed a reply sworn to by her attorney, in which she admits the divorce and that the list of securities filed by James M. Ragen, Jr. did not indicate that the defendant was indebted to Ragen, and denied in toto the allegations in the answer with reference to the ownership of the notes and payment, as well as the allegation with reference to the complaint in the nature of a bill of review.

Subsequently the defendant filed a motion to dismiss the action on the ground that the notes here sued upon are not bearer notes in that said notes were payable "to the order of bearer" and not "to bearer," which motion the court denied.

Plaintiff here urges that the trial court erred in refusing to admit the notes in evidence before the plaintiff proved ownership thereof. On the hearing, before any evidence was introduced, there was considerable

discussion between the court and counsel as to who had the duty of proceeding and as to what proof was necessary. The plaintiff suggested that the execution of the notes not having been denied, the notes should be admitted in evidence, which would make out a prima facie case in favor of the plaintiff; that the law is, that once a bearer note in the hands of a holder is produced, there is no necessity for the plaintiff to prove either that she was the owner of the note or a holder in due course. During this discussion the court stated that ownership would have to be proved as a part of plaintiff's case, and counsel for the plaintiff then said that if the court wanted him to he would put in that proof. The plaintiff took the stand and subsequently there was a further discussion with reference to the order of proof. The court then stated that while it was undoubtedly the rule that the production in open court of bearer notes by the plaintiff would ordinarily be sufficient evidence of the ownership of the notes, because of the fact that there were allegations in the pleadings indicating that the notes were delivered originally to James M. Ragen, Jr. and that he negotiated the notes by delivery to the plaintiff, the burden was on the plaintiff not only to produce the notes in court but to prove ownership; whereupon plaintiff's counsel stated he would proceed.

Plaintiff then testified that the notes in question were originally the property of her former husband, James M. Ragen, Jr.; that she found them in her home and took physical possession of them after she had received her divorce and that she did not know whether or not the notes had been paid; that at the time of the divorce an agreement captioned "Agreement, Assignment and Conveyance" was executed by her and James M. Ragen, Jr., and she identified a document marked plaintiff's exhibit 1 as a photostatic copy of such agreement, which she offered in evidence. Upon the objection of

the defendant that the original be produced or accounted for, the court refused to admit plaintiff's exhibit 1 in evidence. The notes were then offered in evidence and the court stated that he would overrule the objections and admit them, giving as his reason therefor that their admissibility was "governed by the fact that they had been executed and they are bearer notes and they have been in her physical possession and she has testified as to how they came into it. The fact that they came into physical possession does not mean that she is the owner. . . . Counsel sometimes seem to get in mind that when something is admitted into evidence, the legal effect is determined at the same time. It is not."

On cross-examination plaintiff testified that there was no written contract nor any verbal commitment between her and her former husband concerning the notes other than the agreement to which we have referred, plaintiff's exhibit 1; that she found the notes in question among papers belonging to her husband which were in the former matrimonial domicile, which she was then occupying.

█ █ In our view of the case it is not necessary to determine whether or not the court was in error in the view which he took of the law. Following the discussion between court and counsel as to the necessity of proof of ownership of the notes by the plaintiff, the plaintiff did not offer the notes and obtain a ruling from the court as to whether or not they would be admitted without proof of ownership. Nothing was done except that a conversation took place between counsel and the court. Such procedure does not amount to an offer of evidence, and the remarks of the court did not amount to a refusal to admit evidence. There could be no refusal to admit that which has not been offered, and counsel cannot by engaging in a mere conversation with the court, even though it may relate to

361

procedure, or by merely stating what he desired to do, get a ruling by the court upon which he can predicate error. Chicago City R. Co. v. Carroll, 206 Ill. 318, 328. By subsequently following the court's suggestion and proceeding to prove ownership plaintiff waived whatever right she had to object to any allegedly erroneous ruling of the court. Ringholm v. Fitzgerald, 208 Ill. App. 268; Huling v. Century Publishing & Engraving Co., 108 Ill. App. 549. Where an issue is joined upon the question of ownership, the burden in the primary sense rests upon the plaintiff to prove ownership, and this is true in spite of the fact that possession by the plaintiff of a bearer note may raise a presumption of ownership which would make out a prima facie case. Such presumption would only affect the burden of going forward with the evidence. Franklin Bank v. St. Louis Car Co., 321 Mo. 199, 9 S.W.2d 901; Pierik v. Mueller, 201 Ill. App. 108.

■ ■ When evidence is introduced either by the plaintiff or defendant which is sufficient to rebut the presumption the plaintiff must sustain the primary burden of proof and show that he is the owner of the note. Here, before the notes were offered in evidence, the plaintiff testified that she had acquired physical possession of the notes through finding them among the papers of her divorced husband. The effect of plaintiff's testimony as to how the notes came into her possession was sufficient to rebut any presumption which had attached or came into existence because of her possession of a negotiable instrument payable to bearer. In Balch v. English, 247 Ill. App. 429, a suit was brought on bearer bonds. In that case the plaintiff testified that her deceased father, two or three months before his death, had stated to her that he had expended a lot of money for treatment and had used up his ready cash and he gave her the bonds and told her to cash them; that later she talked to her husband and

he told her not to cash them and said he would give her any ready money she needed, which he did. She put the bonds away and did not take them out until about a year later. The defendants contended that the plaintiff had proved by her own testimony that she had no title to the bonds, that they belonged to her father at the time of his death, and that at the time of the suit they belonged to his estate; that she was an agent without interest to collect the bonds and pay the bills of her father with the proceeds; that the death of her father put an end to the agency; and that she cannot maintain the present suit. The court held that on the evidence the bonds were the property of the father and that the plaintiff had no interest in them except that her father made her his agent for the purpose of collecting the bonds and paying the bills with the proceeds. The court says:

"In the present case the plaintiff is suing as the legal owner of the notes or bonds and the evidence shows clearly that she is not the owner of the bonds or notes and that the same belong to the estate of the deceased. If the defendants were to pay the judgment in the present case, that fact would not bar an action by the legal representatives of the estate of the deceased. (Garber v. Myers, supra.) A defendant has a right to require that there shall be such a plaintiff as will make the recovery a bar to any other action by another for the same debt. (Parks v. Brown, 16 Ill. 454, 455.)"

The same rule is applicable here, that in order to make a case the plaintiff must prove ownership of the notes. That this was recognized by the plaintiff is evident from the fact that she tried her case in the trial court upon the theory that she derived her title from an assignment of the notes to her by her divorced husband.

After the court had correctly refused to admit the photostatic copy of the alleged assignment, plaintiff's exhibit 1, the plaintiff attempted to lay the necessary

foundation for its admission. She testified that she did not have the original and that the photostatic copy of the agreement (plaintiff's exhibit 1), which nowhere appears in the record, was one of several copies which she had had made. Her counsel then said that he thought the original of the document was in the Appellate Court because the case (the divorce proceedings) had been taken to the Appellate Court. The plaintiff further testified that she had brought the agreement to her home sometime close to the time at which it was executed; that since that time she had moved all her furniture and personal belongings twice and on each occasion into smaller apartments; that she could not say definitely whether the agreement was one of the things destroyed in her packing in preparation for the first move from her Lake Shore apartment to an apartment on Stone street. She also testified that she had the agreement when she moved from the Lake Shore apartment, but that she did not recall seeing the agreement at the Stone street apartment; that she had brought all her papers down to the office of Zimmerman and Norman, her then attorneys, in the fall of 1952; that she did not remember whether or not she brought the agreement. She also testified that when she separated the papers in her Lake Shore apartment she put all the papers of Mr. Ragen into a large carton and stored them at Werner Bros.-Kennelly warehouse and that to the best of her knowledge they are still in storage and the materials there are stored in her name. She further stated that she twice made a search of her entire home and did not find it. She also testified that she had been represented by attorneys in the divorce proceedings who had assisted in the preparation of the agreement. She contacted neither of them to find out if they had an executed original of the agreement, nor were those attorneys called as witnesses in the hearing. The plaintiff also

testified that she had made no search of the papers stored at Werner Bros.-Kennelly warehouse. There is nothing in the record to show that a search was made by Zimmerman and Norman among the papers which they had, nor were they called as witnesses. Nor is there anything in the record to show that an examination was made with reference to the Appellate Court records in the divorce case.

██ After this evidence was introduced, she again offered in evidence the purported agreement marked as plaintiff's exhibit 1. The court refused to admit it, on the ground that the plaintiff had not laid a proper foundation for introduction of secondary evidence. The rule with reference to the introduction of secondary evidence is well stated in a case cited by plaintiff, People v. Wells, 380 Ill. 347, where the court, in discussing an offer in evidence of a photostatic copy of a document, says:

"In order to let in secondary evidence of contents of a written instrument, the person to whose possession it was last traced must be produced unless this is shown to be impossible, in which case search among his papers must be proven if that can be done. In all events search must be made for the paper with the utmost good faith and the search must be as thorough and diligent as if the rule were that all benefit of the paper would be lost unless it be found."

In the evidence before the trial court no search is indicated of three places where the original document might have been. The trial court correctly held that the plaintiff had failed to lay the necessary and proper foundation for the introduction of the photostatic copy as secondary evidence.

Plaintiff offered and the court admitted in evidence as exhibit 4 a document which was recorded in the office of Recorder of Deeds on March 5, 1953. This document was captioned "Agreement, Assignment and Convey-

ance," was purportedly entered into on June 30, 1952 between the plaintiff and James M. Ragen, Jr., and was signed by both of them. Among other things it provides that James M. Ragen, Jr. represents and warrants to the plaintiff that the list which was attached thereto as exhibit A is a full and complete list of all his assets, and that he agrees to assign and convey to the plaintiff all of his right, title and interest in all property of any kind owned by him except such items as are set forth in the list attached thereto as exhibit A. The document also contains provisions with reference to property settlement, alimony and child support in the event a decree of divorce was entered in the case then pending between the parties, and attached thereto was a one-page list of assets which did not include the notes in question. In admitting it over the objection of the defendant, whose counsel stated that it varied from the copy of the instrument which was attached to the complaint in the nature of a bill of review, in that the bill of review contained an exhibit A consisting of ten sheets, while the exhibit offered had only one sheet, the court said: "I am going to overrule the objection and admit it into evidence and in so doing the record should be quite plain that it is accepted, not as conclusive proof of what agreement was entered into on this date of June 19, 1952, but as conclusive proof of what was presented to the Recorder's Office and was recorded on that day." Nowhere in the record does it appear that plaintiff testified that exhibit 4 was a true copy of the original agreement entered into between the parties and of which plaintiff's exhibit 1 purports to be a photostatic copy.

It cannot be held that exhibit 4 was the same as exhibit 1, or is a copy of the original assignment. Unless this is shown, exhibit 4 has no evidentiary force. Exhibit 1 does not appear in the record and we have no way of knowing what its contents were. Exhibit 4 consists of only five pages, and it is apparent

366

from remarks of plaintiff's counsel and the testimony of plaintiff that the two exhibits varied. The trial court, who had the opportunity to examine and compare the two exhibits, refers to exhibit 1 "including the last 7 or 8 or 9 pages." The court also stated that Mrs. Ragen had testified that exhibit 1 had nothing attached to it at the time she signed it; that she also testified that it had "all of the pages which are attached to plaintiff's exhibit 1 when it was delivered to her . . . In addition to that, it is noted that there has already been admitted in evidence what purports to be a copy of this agreement which has an entirely different exhibit attached to it, an entirely different list of assets. That document has not [sic] been recorded with the Recorder of Deeds of Cook County and it is further noticed that the very nature of this assignment obligation—that is, that it is an assignment of obligation of omitted matters, not of listed matters and for that reason, the Court feels that a greater degree of particularity should be made to show that the document proposed to be admitted into evidence is a true and exact copy, for the omission of anything with reference to it may change its entire meaning . . ." Under those circumstances, with nothing before us to indicate the contents of exhibit 1, which plaintiff testified to be a true and correct copy of the original agreement, and with the apparent variance between that copy and plaintiff's exhibit 4, it cannot be said that exhibit 4 can properly be considered as being a true copy of the original agreement.

The decree of divorce between the Ragens was admitted in evidence. The only reference in the decree to any agreement made between the parties was a statement that there had been an agreement entered into concerning the property owned by each of them, as well as an agreement as to alimony, support money etc., and that both parties had made full disclosure to each other of all the property owned. The decree

provides for the divorce of the parties and sets out in detail provisions for alimony and support money.

Plaintiff further urges that the defendant had in his affidavit filed in support of his motion to open up the judgment admitted that the notes in question were not listed in exhibit A which was attached to the agreement as to property rights allegedly entered into between the parties. The record does not bear out such a contention. All that was said in the affidavit of the defendant was that a review of the list of securities filed by James M. Ragen, Jr. as a part of the divorce settlement did not indicate that the affiant was indebted to James M. Ragen, Jr. and that with the complaint in the nature of a bill of review which had been filed by the plaintiff there was attached an exhibit A which did not show that the notes were assigned to plaintiff. That statement does not constitute an admission that the notes in question were not listed in exhibit A as urged.

■ Plaintiff relies upon the alleged error of the court in rejecting her exhibit 1 purporting to be a photostatic copy of the original agreement. Counsel has not seen fit to include that exhibit in the record. It has been held repeatedly that where oral evidence is offered on direct examination and the court sustains an objection to its admission, the reviewing court cannot consider the question as to whether the trial court erred in its ruling unless an offer of proof was made and the rejected evidence thereby brought into the record. Chicago City R. Co. v. Carroll, supra; Grosh v. Acom, 325 Ill. 474, 490. The same rule applies to documents offered, the admission of which is refused by the court. Without the document before us it is impossible for us to say what, if anything, could be proved by it. Where a party urges error in the trial court's refusal to admit evidence, unless he incorporates the refused evidence in the record, the reviewing court would be justified in refusing to consider the question

368

as to whether or not the trial court was in error. People v. Massey, 400 Ill. 262, 264; Kraft v. Holzmann, 206 Ill. 548, 552. In spite of this omission we have carefully considered this question and find there was no error in the ruling of the court in refusing to admit plaintiff's exhibit 1 in evidence.

The plaintiff relies on the case of Balch v. English, 261 Ill. App. 29, which was a suit brought by the administratrix of the estate after the court in the case of Balch v. English, 247 Ill. App. 429, had reversed the judgment of the trial court on the ground that the evidence showed that the bonds, as between the plaintiff therein and the estate of her father, were the property of the latter. From the opinion in the second Balch case it appears that the bonds in question had been purchased by a candy company; that subsequently the premises of the candy company were burglarized and the bonds stolen; that the bonds in a way not indicated came into the hands of the deceased. The defendant pleaded, among other things, that the plaintiff's testator did not take the bonds in good faith or for value and was not, and is not a holder in due course; that the plaintiff's testator had notice of defects in the title of the person negotiating the bonds; and that the plaintiff and her testator acquired no title thereto. The trial court held that the plaintiff had failed to prove that she was a bona fide holder in good faith, for value, and without notice of the theft. The Appellate Court reversed the trial court, relying upon section 59 of the Negotiable Instruments Act, Cahill's Ill. Rev. St. ch. 98, par. 79 (1929) as follows:

"Every holder is deemed prima facie to be a holder in due course; but when it (is) shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last mentioned rule does not apply in favor of a party who became

369

bound on the instrument prior to the acquisition of such defective title."

The court held that under the statute the showing on the part of the defendant that the title to the instruments was defective as against some intermediate indorsee, standing alone, is not sufficient to shift the burden of proof to the plaintiff inasmuch as it was admitted that there was no question raised as to the good faith or honesty of the administratrix in her holding of the bonds, nor was there anything in the evidence which would affirmatively establish notice of the defect in title or lack of good faith. In the instant case the evidence showed affirmatively that the plaintiff had full knowledge of her lack of title except as she could affirmatively establish it by virtue of an assignment from her former husband. In any case, in the matter before us the question is not a question of whether the plaintiff is a holder in due course but a question as to whether or not the plaintiff is the owner of the negotiable instruments upon which suit is brought, and the evidence of the plaintiff negatives the possibility of her having been a holder in due course since it shows that she had taken physical possession of the notes in question after maturity.

In her briefs plaintiff treats the alleged assignment, referred to as plaintiff's exhibit 1, as though the terms, provisions and contents of the same were properly included in the record, and in her abstract she sets out those provisions, as well as the provisions contained in plaintiff's exhibit 2, which was a purported copy of the complaint in the nature of a bill of review, neither of which exhibits was admitted in evidence. Neither of these documents is incorporated in the record. An abstract of the record is, as the name implies, a condensed version of matters appearing in the record which is prepared by counsel and submitted to this court under its rules. Abstracts are

required for the convenience of the reviewing court and to avoid the necessity of examining the record. An abstract should be accurate and should contain only matter appearing in the record. It is highly improper, and deserving of censure, for counsel to present to the court an abstract of the contents of documents which nowhere appear in the record.

The plaintiff failed to prove ownership of the notes. As we have indicated, such proof was necessary in order to enable her to recover. The judgment of the Superior Court of Cook county is affirmed.

Judgment affirmed.

ROBSON and SCHWARTZ, JJ., concur.