*In re* ESTATE OF FRANK MALLERDINO, Deceased, Appellee—(TRINITY UNIVERSAL INSURANCE COMPANY, Appellant.)

(No. 59546; )

First District (2nd Division)—May 28, 1974.

Hubbard, Hubbard, O'Brien & Hall, of Chicago (Alvin G. Hubbard, Frederick W. Temple, and Douglas W. Graham, of counsel), for appellant.

Roland V. Libonati and Richard Altieri, both of Chicago, for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

This is an appeal from an order entered in the court below dismissing the amended complaint of appellant Trinity Universal Insurance Company (hereinafter Trinity) which had been filed against the estate of Frank Mallerdino, deceased. Trinity had filed its claim against the estate, in its own name, contending that it had been subrogated to the rights of one of its insureds against the deceased to the extent of $4,000, which it had paid said insured under uninsured motorist provisions of an ap-

plicable policy. On motion of the administrator of the estate, the court below dismissed Trinity's complaint; Trinity's appeal followed.

The pertinent facts are as follows. Trinity had issued to one James Warnken an automobile insurance policy, which included uninsured motorist coverage and which was effective from May 11, 1969, to May 11, 1970. The policy provided, in part, that Trinity would pay all sums which an insured would be legally entitled to recover as damages for injuries caused by accident and arising out of the ownership, maintenance, or use of an uninsured automobile.

On September 4, 1969, Frank Mallerdino, an uninsured motorist, allegedly negligently drove his auto into the rear end of an auto operated by Frances Warnken, wife of James Warnken, which resulted in bodily injury to Frances Warnken, an insured under the Trinity policy. Subsequently, in compliance with the uninsured motorist provisions of the policy, on November 19, 1970, Trinity paid $4,000 to Frances Warnken in settlement of her claim under the policy.

Under the "Family Protection Coverage" section of the Trinity policy, there were these provisions:

"Trust Agreement. In the event of payment to any person under this Part:

(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made;

(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this Part;

(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

(d) if requested in writing by the company, such person shall take, through any representative designated by the company, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such person; in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorneys' fees incurred by it in connection therewith;

(e) such person shall execute and deliver to the company such instruments and papers as may be appropriate to secure the rights

and obligations of such person and the company established by this provision."

On November 19, 1970, James and Frances Warnken executed a "Receipt and Trust Agreement" with Trinity, which provided in part:

"In consideration of the payment of the above amount [$4,000.00] by Trinity Universal Insurance Company, herein called 'Beneficiary,' the undersigned, herein called 'Trustee':

(1) Hereby releases and forever discharges Beneficiary from any and all liability whatsoever to the undersigned under the Uninsured Motorist provisions of the above policy for bodily injury, sickness or disease arising out of the above described accident.

(2) Agrees to hold for the benefit of Beneficiary all rights, claims and causes of action which trustee has or may have against anyone other than Beneficiary for such bodily injury, sickness or disease.

(3) *Agrees to take,* through any representative designated by the Beneficiary, *such action in the name of Trustee* as may be necessary or appropriate *to recover damages for such injuries,* sickness or disease, the Beneficiary to pay all costs and expenses in connection therewith.

(4) Agrees that any money so recovered by the Trustee for such injuries, sickness or disease, whether by settlement or otherwise, not in excess of the above amount, plus expenses, costs and attorneys fees incurred by Beneficiary in connection with such recovery, shall be held in trust by the Trustee and paid to Beneficiary upon demand.

(5) Represents to Beneficiary that Trustee has not released anyone other than Beneficiary from any rights, claims or causes of action which Trustee may have to recover damages for such injuries, sickness or disease, and that Trustee has received no payment from anyone other than Beneficiary as damages, compensation or otherwise, for such injuries, sickness or disease." (Emphasis supplied.)

On April 26, 1973, Trinity filed its second amended complaint[1] in tort in its own name against the estate of Frank Mallerdino, alleging, *inter alia,* that the deceased had negligently operated his auto at the time of the September 4, 1969, accident with Frances Warnken, which resulted in injuries to her; that the deceased was an uninsured motorist at the time of the accident; that Trinity had paid Frances Warnken $4,000 in

---

[1] The record before this court does not contain any previously filed complaint.

settlement of her claim with Trinity under the policy's uninsured motorist provisions; and that Trinity had become subrogated to the rights of Frances Warnken against the deceased to the extent of the $4,000 paid. A copy of the Trinity policy was attached to this complaint.

On May 21, 1973, the administrator of the estate filed with the court a motion to dismiss Trinity's complaint, contending that any "subrogating" rights of Trinity had been "transferred or assigned" to Frances and James Warnken, as trustees, by virtue of the provisos of the November 19, 1970, "Receipt and Trust Agreement" set out above; a copy of the agreement was attached to the motion by the administrator as an exhibit. On June 14, 1973, the court entered an order sustaining the administrator's motion to dismiss Trinity's complaint.

As we see it, a single issue is presented here for resolution: whether Trinity, in light of provisions contained in the "Trust Agreement" section of the policy and in the "Receipt and Trust Agreement," had the right to file the complaint in the court below in its own name. On appeal, Trinity argues that by paying the claim under the policy to Frances Warnken, it became subrogated to her rights and was entitled to sue in its own name, pursuant not only to the policy's provisions, but also by virtue of statutory and case law established in this state. The estate, on the other hand, contends that neither the statutes nor the case law of this state provide Trinity the right to sue in its own name, adding, moreover, that the estate has the right to require that there shall be such a plaintiff before the court as will make the recovery against the estate a bar to any other action by another for the same damages.

Section 22(3) of Illinois' Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 22(3)) provides:

"(3) Any action hereafter brought by virtue of the subrogation provision of any contract or by virtue of subrogation by operation of law shall be brought either in the name or for the use of the subrogee; provided, the subrogee shall in his pleading on oath, or by his affidavit if pleading is not required, allege that he is the actual bona fide subrogee and set forth how and when he became subrogee."

Section 755a of Illinois' Insurance Code (Ill. Rev. Stat. 1969, ch. 73, par. 755a), entitled "Uninsured or hit-and-run motor vehicle coverage," reads in part:

"(3) In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such

person against any person or organization legally responsible for the bodily injury or death for which such payment is made, * * *."

*Remsen v. Midway Liquors, Inc.* (2nd Dist. 1961), 30 Ill.App.2d 132, 174 N.E.2d 7, a case to which both parties on appeal call our attention, involved, in the context of uninsured motorist coverage, a trust agreement. In *Remsen,* the administrator of the estate of George W. Remsen (insured) and his widow, Elizabeth N. Remsen, individually instituted a dram shop action, which resulted in a settlement and a covenant not to sue. Payments were made, and, pursuant to order of court, all settlement funds were deposited with the clerk of the court pending the court's further order of distribution.

An insurance company filed an intervening petition,[2] alleging that it had been subrogated to a portion of the settlement proceeds of the dram shop action, in custody of the clerk of the court, because it had paid its insured's claims under applicable uninsured motorist provisions of an insurance policy.

The insureds in *Remsen* had executed a release[3] and trust agreement similar in theory—but not identical in language—to that before the court in this case. At issue in *Remsen* was the legal effect of the release and trust agreement, whereby the administrator for the insured, in consideration of the deceased's own insurance carrier paying the estate the amount of legal damages flowing from the tort of an uninsured motorist, agreed to hold in trust for the insurer any proceeds that the estate of the insured may later obtain from the tortfeasor or any other person legally responsible to the insured up to the amount paid by the insurance carrier.

In *Remsen,* the suit was instituted by the administrator of the estate of the deceased and the widow of the insured, who was the person actually injured in the accident which brought about the litigation; the defendants were a liquor company and a tavern. On the other hand, in the instant matter, the insured was not a party to the litigation in the court below. The *Remsen* court, in holding that the agreement was only for subrogation to part of the proceeds of the cause of action which remained in the insured and was not an assignment of a cause of action for tort, said at pages 143-144 of its opinion:

> "Subrogation presupposes an actual payment and satisfaction of the debt or claim to which the party is subrogated, although the remedy is kept alive in equity for the benefit of the one who

---

[2] The intervening petition was filed some 3 months after one defendant was dismissed by settlement stipulation and less than 30 days before the other defendant was dismissed by settlement stipulation as to one of two counts.

[3] The release was executed Oct. 22, 1958, about 1 month after said suit was filed.

made the payment under circumstances entitling him to contribution or indemnity while assignment necessarily contemplates the continued existence of the debt or claim assigned. Subrogation operates only to secure contribution and indemnity, whereas an assignment transfers the whole claim. [Citation.]"

At page 144 of the *Remsen* opinion, the court stated:

"[W]e conclude that the Trust Agreement is one of subrogation and not an assignment of an action for injuries to the body. It meets all of the characteristics of subrogation in that the debt was paid under a legal obligation for the wrong of another. *It does not transfer the entire claim but only to the extent of the insurer's payment and is repayable only in the event of subrogor's recovery from any person liable for the injury.*" (Emphasis supplied.)

■■■ In our opinion, it is clear that the words "be entitled to the proceeds of any settlement or judgment," as set forth in chapter 73, section 755a(3), and the words "shall be entitled to the extent of such payment to the proceeds of any settlement or judgment," which are a part of paragraph (a) of the Trust Agreement in the instant case, in no way created in Trinity, the subrogee, the right to file suit in its own name against the estate of Frank Mallerdino. Our opinion on this point is amply supported by the rationale espoused in *Remsen, supra.* We further agree with the estate that it had the right to require that there should have been before the court such a plaintiff as would have made recovery against the estate a bar to any other action by another for the same damages arising from the injury to Frances Warnken. See *Ragen v. Bennigsen* (1st Dist. 1956), 10 Ill.App.2d 356, 363, 135 N.E.2d 128; *Balch v. English* (1st Dist. 1928), 247 Ill.App. 429, 435; and *Brosam v. Employer's Mutual Casualty Co.* (4th Dist. 1965), 61 Ill.App.2d 183, 188-189, 209 N.E.2d 350.

Trinity's reliance upon the cases cited in its brief in support of its position is misplaced. Both *Bernardini v. Home & Automobile Insurance Co.* (1st Dist. 1965), 64 Ill.App.2d 465, 212 N.E.2d 499, and *Damhesel v. Hardware Dealers Mutual Fire Insurance Co.* (1st Dist. 1965), 60 Ill.App.2d 279, 209 N.E.2d 876, involved situations where insureds had executed general releases to third parties who had caused their injuries. Thereafter, the insureds sued their insurance companies to collect for medical bills which were covered under their automobile insurance policies. Both *Bernardini* and *Damhesel* reflect holdings that the insureds therein had breached their contractual obligations by executing the general releases, which prejudiced the rights of the insurers. We do not find the circumstances of the matter at hand to be analogous to those presented in *Bernardini* and *Damhesel.*

*Dworak v. Tempel* (1959), 17 Ill.2d 181, 161 N.E.2d 258, concerned a proceeding under the Liquor Control Act instituted by an injured insured *for the use of his insurance company* against certain defendants. The issue presented in *Dworak* was whether an insurance carrier was entitled to assert a claim under the Liquor Control Act, in its own right, or as subrogee of its assured for payments made to its assured for property damage caused by an intoxicated person. The court held, at pages 192-193 of its opinion, that an insurance company was *not* entitled to assert said claim in its own right, but may assert the valid claim as subrogee. However, in *Dworak* the suit was instituted in the name of the injured insured for the use of the insurance company, a situation significantly different from that in the case at bar.

Trinity, in its brief and on oral argument, strongly urged the applicability of *Shaw v. Close* (1st Dist. 1968), 92 Ill.App.2d 1, 235 N.E.2d 830, so far as the case relied upon section 22(3) of the Illinois Civil Practice Act. *Shaw* involved an accident in which the injured sued, in his own name, the tortfeasor for the total repair bill. A release was executed between the parties, under which the only action remaining was that of the insurance company. This court held that the action had to be brought either in the name of, or for the use of, the insurance company, as the injured party had released his entire cause of action. Thus, under such circumstance, the statute (section 22(3)) was held to be applicable. That circumstance, however, is not comparable to the instant situation.

Furthermore, the correlative historical note following section 22(3) clearly indicates that the section was not intended to apply to the circumstances obtaining in the matter at hand; the note reads:

"Subsection (3) would appear to provide that in a suit brought by an insured who has been compensated by an insurer, where the insurer is the real party in interest, the suit must be brought by or for the use of the insurer. But the provision has not been so construed, at least when the insured is entitled to recover something over and above the amount of the subrogation claim. In such a case, the suit may be brought in the name of the insured only, even though all except a nominal share of the claim is made on behalf of the insurer as subrogee. *Osgood v. Chicago & N. W. Ry. Co.*, 253 Ill.App. 465 (1929) (construing the substantially identical predecessor to subsection (3))." (S.H.A., ch. 110, par. 22 (1968).)

While the cited case supports the second quoted sentence, we recognize that it does not support the third quoted sentence, which states the principle which we hold in the instant case. Nevertheless, we think the note-writer's conclusion is both significant and correct.

338

We have considered the other reasons advanced by Trinity in support of its appeal and find that they are without merit.

For these reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

HAYES, P. J., and LEIGHTON, J., concur.

