Robert F. Kinney, Plaintiff Below, Separate Appellant, Appellant, Appellee and Cross-Appellant, Joseph Van Eycke, Plaintiff Below, Appellee and Separate Appellee, v. Kraml Dairy, Inc., et al., Defendants Below.
Appeal of Milk Service, Inc., and Lee Nevtipil, Jr., Appellants and Cross-Appellees.

Gen. Nos. 47,309, 47,310.

First District, Second Division.
February 17, 1959.
Released for publication March 20, 1959.

Wyatt Jacobs, of Jacobs, Miller, Rooney & Lederleitner, of Chicago (Joseph B. Lederleitner, William L. Eifrig, Barry Kroll, of counsel) for Robert F. Kinney, separate appellant, appellee, and cross-appellant.

Joseph Barbera, of Chicago (Charles D. Snewind, of counsel) for Joseph Van Eycke, plaintiff below, appellee and separate appellee.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Oswell G. Treadway, of counsel) for Milk Serv-

ice, Inc., and Lee Nevtipil, Jr., appellants and cross-appellees.

JUSTICE MURPHY delivered the opinion of the court.

This appeal involves three consolidated causes of action, arising from a highway intersectional collision between an automobile and a tractor-trailer unit. The automobile driver and his passenger seek damages for serious injuries. Out of fourteen forms of verdict given to the jury for consideration, a single verdict of $100,-000 was returned for the passenger and against the automobile driver, the tractor driver, and its owner. The instant appeal is that of the automobile driver. An appeal by the tractor driver and its owner was dismissed by stipulation.

The collision occurred about 5:30 A. M. on December 20, 1955, in the intersection of Higgins and River Roads, Cook County, Illinois, between an eastbound automobile, owned and operated by Robert Kinney, in which Joseph Van Eycke was riding, and a northbound tractor-trailer unit, owned by Milk Service, Inc., and operated by Lee Nevtipil, Jr. It was dark, the pavement dry, and all participants were familiar with the intersection.

There were electrically operated traffic lights at the intersection, automatically controlled by approaching vehicles passing over activating devices placed in the pavement. The northbound traffic control activator was located 225 feet south of the south edge of Higgins Road, and the eastbound activator was located 205 feet west of the west edge of River Road. When the light for one road is green, the light for the intersecting road is red. If there is no traffic passing over the activators, the lights do not change but keep the color last activated. A series of vehicles approaching a green light, each successively activates the green for

534

six seconds, with a maximum activation of forty seconds. A car approaching a red light, upon passing over the activator, starts a four second red to green time cycle, three seconds of red, one second for red with amber, and then green. At the start of a cycle, the green light is immediately joined by the amber, and both remain for the four second cycle, before turning red. Thus, the vehicle passing over the activating device, with the green light in its favor, has six seconds plus the four seconds required to change from green to red, a total of ten seconds in which to enter the intersection on a green light.

The Milk Service tractor-trailer was proceeding north on River Road in the easterly lane, and Kinney's automobile was proceeding southeasterly on Higgins Road in the inner lane. The front of the automobile collided with the side of the tractor-trailer. The automobile came to rest about 20 feet north of Higgins Road, in the south traffic lane on River Road, facing south. The tractor-trailer unit came to rest 200 feet north of Higgins Road. All vehicles were damaged. Kinney and his passenger, Van Eycke, were severely injured. Nevtipil, driver of the tractor-trailer, was slightly injured.

Kinney sued Milk Service and Nevtipil and they counterclaimed against him. In a separate suit, Van Eycke sued Milk Service, Inc., Nevtipil and Robert Kinney. The three actions were consolidated for trial. A single verdict was returned in favor of Van Eycke and against Kinney, Milk Service and Nevtipil. No verdicts were returned on the other two actions. The trial court entered judgment on the single verdict for Van Eycke and denied a motion by Kinney to enter final judgments (1) in his action against Milk Service and Nevtipil, and (2) in the action of Milk Service and Nevtipil against Kinney. This resulted in a verdict and judgment on the action of Van Eycke and no ver-

535

dict or judgment on the Kinney action for damages or on the counterclaim of Milk Service and Nevtipil against Kinney.

The principal questions are (1) whether Van Eycke was Kinney's guest; (2) whether the verdict was against the manifest weight of the evidence; (3) whether prejudicial error was committed during the trial, so as to require a new trial on any or all of the three actions; and (4) whether the court erred in refusing to enter judgment on the Kinney action or on the Milk Service counterclaim.

The facts on the question of Van Eycke's status are undisputed. Kinney and Van Eycke both lived in Carpentersville, Illinois, and both worked in Chicago for a milk distributor. Van Eycke moved to Carpentersville about two weeks before the occurrence. He and Kinney entered into an agreement to take turns driving their cars to work on alternate days. Kinney testified, "The reason for that was that we would save on gas and oil and a certain amount of wear and tear on our cars. Each of us had a car. On the morning of the occurrence it was my turn to pick him up." Van Eycke testified, "We would save a little money and wear and tear on both of our cars. I definitely agreed to it. We were transporting each other under this agreement."

Kinney argues that the arrangement was so economically unsound that if it was carried on as a "business purpose" it would result in bankruptcy, and the dominant purpose was a social one and, therefore, Van Eycke was a guest, entitled to recover only for wilful and wanton misconduct (Ill. Rev. Stat., 1955, Ch. 95½, § 58a).

■ We do not believe it necessary to review the authorities cited by both sides. We believe Van Eycke was being carried for hire and, therefore, was not a guest. These trips were not social. The sole purpose

536

was convenient transportation for both, and the economic benefits to each were weighed by them and found sufficient to enter into the reciprocal transportation agreement. This was an arrangement with a "business aspect," which created a passenger for hire status for Van Eycke at the time of the occurrence, with no participation in the control of the Kinney vehicle then being used. There was no difference in their testimony as to this agreement, making it a question of law and not of fact, and the trial court was correct in its determination (that Van Eycke was a passenger) and in refusing guest instructions. Miller v. Miller, 395 Ill. 273, 282–3 (1946); Dirksmeyer v. Barnes, 2 Ill.App.2d 496, 502 (1954).

Kinney argues that by Van Eycke's own testimony and all other corroborating evidence of record, being light and speed deduction calculations based on the time operation of the traffic light activators, it was the northbound traffic driver's utter disregard of the red light that was the proximate cause of both eastbound plaintiffs' injuries, and that having the green light, Kinney had the right to enter the intersection without stopping or slowing to a near stop, because he was protected by the northbound red light and was entitled to presume that the tractor-trailer would stop. Travis v. Eisenlord, 256 Mich. 260, 239 N. W. 304.

█ Even assuming, but not deciding, that Van Eycke's testimony is contrary to the verdict, he would nevertheless be entitled to the benefit of any evidence in the record, even though inconsistent with his testimony. Leider v. Campbell, 7 Ill.App.2d 18 (1955).

█ The testimony as to who entered the intersection on the red and green lights is conflicting and is the vital fact issue. The jury may have believed, on the testimony, that Nevtipil entered the intersection on the red light, but that Kinney also was guilty of negligence in entering the intersection on a green light

537

at 35 to 40 miles per hour, under the circumstances described, without slowing down or stopping when he could have. Van Eycke said that the truck was going between 60 and 70 miles an hour; that he warned Kinney to watch out for the truck and Kinney replied, "We have the green light. He will stop." Kinney testified that, "When I saw the trailer a hundred feet away, I had my foot on the gas. I kept it right on the gas until just previous to the trailer being right in front of me. . . . I could have brought my car to a stop . . . before my car reached the point of impact." There was sufficient, within the instructions of the court, for the jury to conclude that Kinney was not in the exercise of ordinary care and caution for his own safety or for the safety of others, just before and at the time of the occurrence, and, therefore, jointly with Nevtipil, was guilty of negligence which proximately caused or proximately contributed to the injuries of Van Eycke.

■ Kinney does not show that this verdict is contrary to the manifest weight of the evidence. This is not a case in which an opposite conclusion to that of the jury is clearly evident, as is required before this court can disturb the verdict. Griggas v. Clauson, 6 Ill.App.2d 412, 419 (1955).

■ Kinney charges that the $100,000 verdict is excessive and the result of passion and prejudice incited by harmful errors committed during the trial, and that since his own injuries were equally severe, there is no sense in the Van Eycke verdict and the lack of a verdict on the Kinney claim. The injuries of Van Eycke consisted of a compound comminuted fracture of the right femur, a concussion and multiple lacerations. He was semicomatose for six days. Surgery was performed to reduce the fracture. The results were not good. A steel rod, 18 inches in length, inserted in the marrow cavity of the bone, caused considerable

trouble. It weakened and bent several times and had to be replaced in January, 1957. The right leg is three-fourths of an inch shorter than the left. He has to have a built-up shoe, and has a 20% motion loss in the knee. He has headaches and dizzy spells due to brain injury, which in the opinion of the doctor is permanent. We do not believe the verdict is the result of passion or prejudice or so clearly excessive as to require this court to disturb it. Mueth v. Jaska, 302 Ill. App. 289 (1939).

Kinney and Nevtipil testified there were no other vehicles at the intersection, yet Kinney contends he should have been permitted to show the possibility of the eastbound green light being tripped by the employees of a Bowman Dairy substation on the southeast corner of the intersection. The plant was accessible only from Higgins Road, east of the intersection but west of the activator. A number of employees entered the plant at about the time of the occurrence, but there was no direct testimony that one of the Bowman employees activated the light. Kinney contends that this circumstantial possibility would tend to support his testimony rather than Van Eycke's, as to when the east and west light changed to green. We believe the use of the time arrival testimony, to speculate as to whether they did or did not activate the green light, is too inconclusive or conjectural to be of any value in this case. There was no error in rejecting the testimony.

The single verdict, Kinney argues, requires a new trial on his action and also on the Van Eycke action against him, claiming it was brought about by prejudicial comments during the trial and oral instructions or directions by the court when submitting the verdicts. In submitting the fourteen verdicts, the oral directions of the court included:

■■■■■■■■■

". . . If you are to find a verdict finding all of the defendants guilty, and in favor of one, sign one verdict. If you find them all guilty in one verdict, you sign one verdict only. If you find any other way you will have to sign more than one verdict depending upon what your result is. So watch these verdicts carefully and see that when you do find then return one, or more, that they are not inconsistent, . . . ."

■ ■ We find nothing prejudicial or improper in a court, when submitting possible verdicts to a jury, giving oral directions as to procedure in completing the verdict the jury may agree upon. The circumstances in this case presented a difficult verdict problem for the judge and jury. We do not believe the court's remarks were prejudicial to Kinney.

■ ■ However, we believe that these remarks tend to explain the action of the jury in returning only one signed verdict. In finding Kinney, Milk Service and Nevtipil guilty, the jury must have believed that signed verdicts against the claim of Kinney, or against the counterclaim of Milk Service and Nevtipil, were unnecessary, in view of the court's remarks on one verdict—that it was implicit from the verdict returned, that they were actually finding Milk Service and Nevtipil not guilty on Kinney's claim, and finding Kinney not guilty on their counterclaim. This is consistent with the verdict returned. Where, in a multiple action trial, the jury returns a verdict on one action or claim but is silent as to the other actions, the verdict returned will be construed, if the manifest intention of the jury is sufficiently certain, to make it conform to the intention of the jury and to carry their findings into effect. (Roadruck v. Schultz, 333 Ill. App. 476 (1948); Goldbeck v. Cieslik, 5 Ill.App. 2d 529, 534 (1955).) In the instant case, we believe that the verdict returned was a sufficient manifestation of the intention of the jury to find against Kin-

ney in his suit and against Milk Service and Nevtipil on their counterclaim, and that the trial court had the power to so construe the verdict and to enter judgment accordingly. Therefore, the failure of the jury to return a verdict in Kinney's suit does not require a new trial of his cause of action.

We have considered other objections urged by Kinney, such as alleged prejudicial remarks of court and counsel, including the alleged improper rulings of the court and in restricting cross-examination of certain witnesses, and find no prejudicial or reversible error. Specific discussion of the points would unnecessarily extend this opinion. All parties to the trial were represented by competent and experienced trial counsel and before a fair-minded and experienced trial judge. We believe all parties were given a fair trial, without prejudicial error.

For the reasons stated the judgment for plaintiff Van Eycke is affirmed. Pursuant to the power given this court in [Ill. Rev. Stats.] Chapter 110, section 92(e), judgment is entered for Milk Service, Inc., and Lee Nevtipil, Jr., and against Robert F. Kinney, without costs, in his suit against them. It is further ordered that judgment be entered for Robert F. Kinney and against Milk Service, Inc., and Lee Nevtipil, Jr., without costs, in their counterclaim against him.

Judgment affirmed.

LEWE, P. J. and KILEY, J., concur.