Donald McNanna, a Minor by Edward D. McNanna, His Father and Next Friend, Plaintiff-Appellant, v. Kaspar Gach, Administrator of the Estate of Charles J. Gach, Deceased, Defendant-Appellee.

Gen. No. 49,300.

First District, First Division.

July 27, 1964.

O. William Olson, of Chicago (Dom J. Rizzi, of counsel), for appellant.

Jacobs and McKenna, of Chicago (Royce Glenn Rowe, Charles D. Snewind, and Barry L. Kroll, of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

This is a personal injury action by an occupant of a car, which collided with a truck, and both drivers were killed. The separate actions of plaintiff and of the administrator of the estate of the truck driver, against the administrator of the estate of the deceased driver of the car, were consolidated for trial. Verdicts were returned for the defendant in both actions. A

new trial was allowed in the truck driver's case and denied in the occupant's case. The court found there was no just reason for delaying appeal in the occupant's case.

The principal question is whether the court was correct in holding that the occupant, plaintiff Donald McNanna, a minor, was "a guest passenger under the evidence and the law in this case."

Plaintiff McNanna contends that he was not a guest in the automobile at the time of the occurrence within the purview of the Illinois Guest Act; therefore, the court erred in striking Count III of the amended complaint, which charged the defendant's decedent with ordinary negligence or lack of due care in driving the automobile as opposed to wilful and wanton misconduct. Plaintiff also contends that the court erred in giving an instruction regarding the Guest Statute, which omitted the words "without payment for such ride," as provided in the statute.

The evidence as to the occurrence came solely from the testimony of three other occupants of the car. On October 17, 1956, plaintiff and five other students of the Joliet Catholic High School were headed for home, riding in an automobile being driven by Charles Gach, now deceased, also a student at the same school. They were driving in an easterly direction on 147th Street, a two-lane road, 18 feet wide. The pavement was dry, visibility was good, and at the point in question the speed limit was "reasonable and proper," as there was no statutory speed limit.

As the Gach car reached the "crest of the hill," the occupants saw a slowly moving truck ahead in the eastbound lane. At this point, Charles was driving between 50 and 60 miles per hour. The truck was then 150 to 350 feet ahead. Charles then pulled out into the westbound lane to pass. He was at this time from 30 to 60 feet behind the truck, and his speed was then 45 to 50 miles per hour. The truck was then

moving forward slowly. One witness estimated its speed at 15 or 20 miles per hour. No turn signals were ever given by the truck driver. Charles' car had just begun pulling abreast of the truck, being "almost next to the truck," "almost parallel with the truck," with the "front of the car . . . even with his tailgate." Suddenly the truck "seemed to come over in our lane," "he turned into us," "made a left-hand turn, which would be north into our path." The collision followed, with the right front of the fender of the Gach car coming in contact with the left fender of the truck. The point of impact was half-way in the north, westbound lane, either at "Long Avenue" or 10 to 15 feet before "Long Avenue."

As to the status of the occupants of the car, John Hartmann testified that he and the other boys in the car had arrangements with the driver "as far as re-imbursing him for expenses of the automobile, and coming back and forth from school." It was $2 a week, and he had been riding with Charles Gach since September, the beginning of the school year. The $2 per week was for gas and expenses, and it was less than he would pay on the train. John Skelly testified that he and the other boys had ridden with the de-cedent, Charles Gach, for maybe two or three months, five days a week. Kenneth Evans testified that all of the boys had arrangements with the driver for pay-ment of expenses in riding back and forth to school.

At the close of plaintiff's case, the trial court sus-tained defendant's motion to strike Count III, the negligence count, and remarked:

> "I'll sustain the motion. The mere fact that some boys said they contributed $2.00 a week towards the gas and oil and expenses of driving to and from school with the driver, Charles Gach, is not in my opinion the kind of complaint that makes them a passenger for hire.

278

"It's a contribution for the expense of transportation that would be much less then he would pay for ordinary expenses, or ordinary transportation, and I consider it a mere contribution of no significance.

"I do not think he's a passenger for hire, and the question of ordinary negligence will also be stricken, because it follows that if he's not a passenger for hire, he's a guest passenger, and I hold that he's a guest passenger under the evidence and the law in this case."

Both parties cite cases from Illinois and other jurisdictions interpreting the language of the so-called "Guest Statute," which was in force at the time of the occurrence (Ill Rev Stats 1955, c 95½, § 58a):

"Injury to guest.] § 42–1. No person riding in a motor vehicle as a guest, without payment for such ride, nor his personal representative in the event of the death of such guest, shall have a cause of action for damages against the driver or operator of such motor vehicle or its owner or his employee or agent for injury, death or loss, in case of accident, unless such accident shall have been caused by the wilful and wanton misconduct of the driver or operator of such motor vehicle or its owner or his employee or agent and unless such wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought.

"Nothing contained in this section shall be construed to relieve a motor vehicle carrier of passengers for hire of responsibility for injury or death sustained by any passenger for hire."

Defendant contends that "plaintiff failed to adduce proof on all the elements necessary to raise the issue of his status as being other than a guest"; therefore,

279

the trial court properly held that he was "a guest passenger under the evidence and the law in this case," and as his instructions thereafter reflected this ruling, no error was committed by either his ruling or his instructions.

We believe the facts here are quite similar to Dirksmeyer v. Barnes, 2 Ill App2d 496, 119 NE2d 813 (1954). The facts there disclose that the plaintiff and five others each paid the defendant $2.00 for a round trip to and from home and work, which was 80 miles away. The payment was made every Friday evening. Defendant relied on the "Guest Statute" and contended that, in the absence of an express agreement, the compensation had to be substantially commensurate with the cost and hazard of the undertaking. The court, in affirming a jury verdict for plaintiff, said (p 503):

> "These trips were not made for pleasure or social purposes. The arrangement or custom was not for an isolated, single or occasional transportation but had been in effect on the above paying basis for more than four months, five days each week. It comprehended continuous transportation to and from work. The amount of the payment, whether by agreement or custom was fixed, certain and substantial in amount. Even if inadequate, as appellant contends, it constituted an economic benefit to the defendant for the reason he was obliged to make the trip to reach his own place of employment."

In 8 Am Jur2d, Automobiles and Highway Traffic, § 480, p 47, it is said:

> "Where there is an arrangement before the start of a trip that an occupant of a motor vehicle should contribute to the cost of operating the vehicle, or where it otherwise appears that the

280

transportation is given in consideration of such contribution, this constitutes 'payment' or 'compensation' for the transportation under the guest statutes, so as to entitle the occupant to the status of a passenger for hire rather than an invited guest. Such prior arrangement need not have all the characteristics of an enforceable contract to be effective to make the occupant a paying passenger. . . ."

We conclude, as a matter of law, that plaintiff was a passenger and not a guest. These trips were not made for pleasure or social purposes. The arrangement or custom was not for an isolated, single or occasional transportation, but had been in effect on a paying basis for more than two months, five days each week. It comprehended continuous transportation to and from school. The amount of the payment was certain and substantial in amount. The arrangement constituted an economic benefit to the deceased driver, Gach, for the reason he was obliged to make the trip to reach his own place of study.

Therefore, Count III of the amended complaint, which charged defendant with ordinary negligence or lack of due care, should have been allowed to stand with the submission of that issue to the jury. Also, it follows that no instruction on the "Guest Statute" was proper in this case in the absence of a conflict in testimony on this point. 8 Am Jur2d, Automobiles and Highway Traffic, § 475, p 40.

For the reasons stated, the judgment in favor of defendant is reversed and the cause is remanded for a new trial in accordance with the pronouncements made herein.

Reversed and remanded.

BURMAN and KLUCZYNSKI, JJ., concur.