Patsy J. Freer, Individually, and Patsy J. Freer, as Administrator of the Estate of Kenyon L. Freer, Deceased, Plaintiff-Appellee, Cross Appellant, v. Ida Alberta Rowden, Defendant-Appellant, Cross Appellee.

Gen. No. 10,998.

Fourth District.

May 13, 1969.

Gillespie, Burke & Gillespie, of Springfield (George B. Gillespie and Robert E. Gillespie, of counsel), for appellant.

Knuppel, Grosboll, Becker & Tice, of Petersburg, for appellee.

TRAPP, P. J.

Defendant appeals from a judgment entered upon a jury verdict returned in an administrator's action for

wrongful death. Plaintiff appeals from the court's order for a remittitur in the sum of $868 from the verdict upon the administrator's count for funeral and medical expense.

Defendant urges error in denying her motion for directed verdict and in refusing instructions directed to issues as to whether decedent was a guest under chapter 95½, § 9–201, Ill Rev Stats 1965, and in submitting to the jury issues of defendant's general negligence under res ipsa loquitur, as well as for specific negligence pleaded.

Plaintiff alleged the death of the decedent while he was riding in an automobile under the control of the defendant with an allegation that the injury would not have occurred if defendant had used ordinary care. There was also submitted as specific negligence whether defendant drove the left front wheels off the slab of the passing lane onto the dividing median and was negligent in turning sharply back onto the pavement with the result that the car skidded and rolled over. Defendant urges that the evidence shows that the misadventure occurred when the left rear tire of the automobile blew out while defendant was passing another vehicle.

Both defendant and the decedent lived in Girard, Illinois, and were employed at the Allis Chalmers plant in Springfield, the former having been employed for some twenty-four years and the latter for two or three years. For a year defendant had driven her car daily to and from work, and decedent had been riding with her on most working days for some two or three months. On Mondays he drove his own car so that he could attend National Guard drills. As to the arrangement for such travel, defendant testified that decedent was a friend of her son and ". . . between the two of them they talked me into it." She further testified that every two or three weeks defendant would purchase a tank of gasoline for the two-year-old Ford Falcon used, and that while she accepted such purchase she never requested that he buy

gasoline. The total distance travelled daily was between 50 and 60 miles.

There was possible impeachment through her statement at the Coroner's inquest that decedent purchased gasoline two or three times a week. The defendant testified that at the date of the inquest she had not recovered from the physical and emotional shock of the experience. The widow of the decedent testified that he brought $125 every two weeks as his pay, that she divided the money to apply on bills and gave some to decedent. Her statement that decedent said that $5 of the sum given him was for the ride was stricken as hearsay. The trial court denied defendant's instruction tendered as IPI 72.01, modified, defining a guest and ruled as a matter of law that decedent was a passenger for hire.

We have examined the reported cases wherein travel to and from work in another's automobile raised the issue of status as guest or passenger. In Marks v. Newburger, 69 Ill App2d 220, 216 NE2d 250 (1966), plaintiff and defendant travelled some 30 miles a day to a place of common employment in defendant's car throughout the five-day work week. The evidence disclosed that plaintiff purchased defendant's breakfast once or twice a week and an occasional tank of gasoline. The court concluded that plaintiff's status was that of guest in that there was no arrangement or understanding with regard to plaintiff's payment for such transportation. The result was to the contrary in McNanna v. Gach, 51 Ill App2d 276, 201 NE2d 191 (1964), wherein four youths each paid $2 per week to a fellow student for a daily ride to school. The court noted that there was a regular and continuing arrangement with certain and substantial payment made by agreement or custom, so that the plaintiff was a passenger as a matter of law. In Kinney v. Kraml Dairy, Inc., 20 Ill App2d 531, 156 NE2d 623 (1959), the court found that there was a passenger status in the

reciprocal arrangement where the plaintiff and defendant on alternate days drove the other to work. In Dirksmeyer v. Barnes, 2 Ill App2d 496, 119 NE2d 813 (1954), defendant drove daily to work with three men who paid $2 per trip, and one who travelled a lesser distance paid fifty cents. The court held that the evidence sustained a finding that plaintiff was a passenger in that there was regular and continuous transportation provided for a regular, certain and substantial payment.

■ In this case there is some evidence that plaintiff's travel with defendant originated in the social relationship of plaintiff and defendant's son, and there is, we believe, a conflict of evidence as to whether there was an arrangement to provide transportation for an agreed or customary sum certain, or whether defendant received such tangible benefits as would motivate furnishing transportation. The court's determination that decedent was a passenger as a matter of law does not meet the standard stated in Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504. There is such difference in the testimony as to the arrangement that the issue of status was a question of fact for the jury. Kinney v. Kraml Dairy, Inc., 20 Ill App2d 531, 156 NE2d 623; McNanna v. Gach, 51 Ill App2d 276, 201 NE2d 191 (1964). We believe that the trial court erred in the ruling.

We examine certain issues which would again arise on a new trial. Defendant contends that the trial court erred in submitting both issues of specific and general negligence to the jury and instructing them upon the same, it being argued that the evidence shows that the defendant's left rear tire blew out causing the car to leave the slab and subsequently roll over. Following the event, a member of the State Police took custody of the tire, but it was mislaid or lost so that it was not produced at the trial or available for skilled examination. The testimony and the photographs in evidence show both the left front and left rear tires of the Falcon flat. The testimony

339

is that the left rear tire was a two-ply tire rated four-ply with good tread, but that there was a break in the outer surface several inches in length and a longer break on the inner surface. No examination was made of the front tire for the stated reason that no break in the outer surface was observed. Plaintiff argues that the tire damage occurred as the car was turned back from the median strip onto the pavement, skidded some 99 feet and overturned. There is no evidence that the Falcon was driven at excessive speed.

Defendant testified that as she was passing on the left of another vehicle she heard a hissing noise for an instant, which she described as a blowout. The car went off the road and she hit her head and had no further recollection of what happened. One Dozier, called as a witness by defendant, testified that he was driving some 150 feet behind defendant's car, that he heard a noise, ". . . like a tire blew," and the car went off the slab to the left.

One Sweet, who was riding with Dozier, was called as a witness by plaintiff. On direct examination he testified that he thought a tire blew out, as he was surprised to see defendant's car swerve off the slab. On cross-examination, he stated that he did not see why the car left the pavement. Plaintiff also called one Skinner who testified that he was about a quarter of a mile behind the Falcon, that two or three cars intervened between them and that he saw defendant's car veer off as though to pass, then a cloud of dust and the car rolled several times.

■ Where general negligence has been pleaded it is a question of law whether or not the doctrine of res ipsa loquitur applies in a given case. Metz v. Central Illinois Electric & Gas Co., 32 Ill2d 446, 207 NE2d 305; Roberts v. Economy Cabs, Inc., 285 Ill App 424, 2 NE2d 128; Mc-Cleod v. Nel-Co. Corp., 350 Ill App 216, 112 NE2d 501.

340

There is authority that under certain circumstances, both general negligence and specific negligence may be issues in the alternative for the jury. The possibility is provided in Illinois Pattern Instruction, 22.02, although the Comment cites no authority. The Supreme Court did not have occasion to discuss the question in Metz or in subsequent cases presented to us. In Erckman v. Northern Illinois Gas Co., 61 Ill App2d 137, 210 NE2d 42 (1965), it was held to be error to instruct in the language of IPI 22.02 for the reason that there was no pleading of specific negligence, but in expectation of another trial the court pointed out that the inference of negligence arising under the doctrine of res ipsa loquitur was not necessarily inconsistent with proof of specific negligence, for to hold that proof of specific negligence precludes the application of the res ipsa loquitur doctrine:

". . . could lead to the absurd result of weak proof of specific negligence voiding a strong inference of general negligence. . . . If there is an inference of general negligence and proof of specific negligence, but reasonable men may differ as to the effect of this evidence, it should then be for a jury to determine under which theory, if any, the plaintiff should prevail."

In Turner v. Wallace, 71 Ill App2d 160, 217 NE2d 11 (1966), it is stated that if at the close of the case, the evidence fails to reveal the specific forces which produced the injury and there is sufficient proof to certain affirmative findings on each of the necessary elements from which the inference of negligence is permitted, the jury should be instructed in terms of res ipsa loquitur as well as specific negligence, but that if the evidence from all sources shows the facts and reveals the precise causes of the injury there remains nothing for inference and the res ipsa instruction should not be given. To the

341

same effect is Decatur & Macon County Hospital Ass'n v. Erie City, 75 Ill App2d 144, 220 NE2d 590. See also Prosser, Law of Torts, 2nd ed, c 7, § 43, p 214.

██ It appears that reasonable men might differ as to the effect of the evidence found in this record and the trial court did not err in instructing both as to general negligence and specific negligence.

Defendant tendered instructions upon the theories of negligence submitted to the jury in the language recommended in IPI 21.02 and 22.02. The court refused such instructions and gave plaintiff's instruction deemed to be a modified form of IPI 22.02 in the following language:

"The Plaintiff has the burden of proving her case by the preponderance of the evidence; under our law she may attempt to prove her case in either of two ways. She may either prove each of the following propositions:

"First: That Kenyon Freer, deceased, was injured, and as a result of said injuries he died on May 14, 1964.

"Second: That the said injuries were received from an automobile which was under the Defendant's control.

"Third: That in the normal course of events, the injury would not have occurred if the Defendant had used ordinary care while the automobile was under her control.

"If you find that each of these propositions had been proved, the law permits you to infer from them that the Defendant was negligent with respect to the automobile while it was under her control or management. If you do draw such an inference your verdict must be for the Plaintiff if any injury or damage proximately resulted therefrom.

342

"Or, on the other hand, Plaintiff may prove her case by proving each of the following propositions:

"First: That the Defendant drove her car in such a manner that it ran off the left side of her right half of the roadway onto the median strip dividing said highway or that in attempting to return to the paved portion of the highway she turned the car driven by her suddenly and more sharply than was reasonable or prudent and that in so acting, or failing to act, the Defendant was negligent.

"Second: That Kenyon Freer was injured and as a result of said injuries died on May 14, 1964.

"Third: That the negligence of the Defendant was a proximate cause of the injuries to the Plaintiff.

"If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the Plaintiff.

"But, if you find from your consideration of all of the evidence that Plaintiff has failed to prove a proposition of each manner of proof then your verdict should be for the Defendant."

The instruction as given demonstrates the difficulty of achieving simple clarity in describing the burden of proof for the respective theories of liability originally pleaded in separate counts for the court and lawyers, but presented to the jury without distinguishing such. The consolidated form of instruction used requires the omission of language specifically recommended in the Pattern instructions, both as to the burden of proof for specific negligence alleged (IPI 21.02), and general negligence alleged (IPI 22.01), in order to avoid the ambiguity which the omitted language in each instruction would have upon the other instruction.

The defendant urges that there is particular prejudice in the omission from the instruction of the burden of proof on general negligence (IPI 22.01) of the language:

"But if, on the other hand, you find that any of these propositions has not been proved, or if you find that the defendant used ordinary care for the safety of others in his management of the ———— (instrumentality), then your verdict should be for the defendant."

This objection must be given serious consideration in that the language, ". . . the law permits you to infer . . . that the defendant was negligent . . . ," does not make clear that such inference is not to be made by the jury but is permissive only, and that it is for the jury to decide whether or not such inference should, in fact, be drawn from the evidence. The language provided in the form of instruction upon the issue of general negligence (IPI 22.01), but omitted here, contributes to the balance and clarity of the law to be stated to the jury.

██ The final paragraph of the given instruction purports to supply the statement of law which has been omitted from the separate instructions (IPI 21.02 and IPI 22.01). The language actually used requires the most precise reading and it appears that repeated reading by the several jurors would not necessarily produce common understanding of its application. The submission of general and specific negligence in the alternative as proposed in IPI 22.02 contemplates that the issue of specific negligence shall be submitted separately as in IPI 21.02. The modified form employed in this case does not present the issues in the simple language contemplated in the forms of pattern jury instructions.

We have not overlooked the omission of the element of decedent's due care in each aspect of the given instruction. Upon this record, the issue was not raised on appeal.

The jury returned a verdict upon the administrator's count for funeral expenses in the sum of $1,045.33. Upon its own motion, the court ordered a remittitur in the sum of $868 and plaintiff appeals from such order. The apparent reason for the court's action was that an answer to certain interrogatories by plaintiff's administrator disclosed that she received from the defendant's insurer the sum of $862 for funeral expense and $33.30 as grave expense. Plaintiff relies upon Saunders v. Schultz, 20 Ill2d 301, 170 NE2d 163. In that case a widow sued for funeral and medical expenses for which she was liable, no claim having been made by decedent's estate. Defendant urged error in the sustaining of objections to interrogatories as to available insurance to pay the expenses of the widow and argued that recovery should be limited to amounts paid from her own funds over and above the proceeds of such insurance. The court noted that plaintiff's medical and hospital insurance was a contractual benefit procured by plaintiff or plaintiff's decedent which was not for the benefit of the defendant tort-feasor, and that such proceeds as were received did not relieve the defendant of his liability for the entire amount. The court cited Restatement of the Law of Torts, § 920(e). That citation speaks in the context of the injured party's proceeds from ". . . previous contractual arrangements made for his own benefit, not the tortfeasor's." Such proceeds are a part of what has been termed "collateral sources."

 █ Here, however, the plaintiff received the benefit under the provisions of the insurance procured by defendant for her possible indemnity which it was her object to secure. Without such remittitur, upon a judgment within the limits of defendant's policy, plaintiff would recover twice for the same expense from a fund created by defendant.

It would appear to be reasonable that if defendant had personally volunteered to pay the expenses at issue

upon subsequent litigation it should be fair that she be permitted to claim credit for the amount paid. It appears that the majority of courts hold that funeral and medical payments paid by decedent's insurance are not within the doctrine of "collateral sources." See cases collected 11 ALR3d 1115.

The case is reversed and remanded for further proceedings not inconsistent with the conclusions stated.

Reversed and remanded.

SMITH, J., concurs.

CRAVEN, J., dissents.

CRAVEN, J., dissenting:

My colleagues reverse and remand this case for a new trial so that the jury may determine whether the relationship between the decedent and the defendant was that of guest or passenger. As I view this record, the trial court was correct in determining that the decedent was a passenger as a matter of law. Although other matters are discussed in the opinion, the reversal and remandment are predicated upon this single issue. I must respectfully dissent.

A guest is one who is invited, directly or by implication, to enjoy hospitality of the driver and who accepts the hospitality for either business or pleasure without making any return. See Miller v. Miller, 395 Ill 273, 69 NE2d 878 (1946). The facts in this record disclose that the decedent was transported to and from work by the defendant each working day except on Mondays when the decedent drove his own car in order to facilitate his attendance at National Guard drills. According to the evidence, the decedent and the defendant's son, who were friends, talked the defendant into this arrangement. It seems to me that the evidence is uncontradicted that the decedent purchased gasoline for the defend-

▮▮▮▮▮▮▮▮

ant's car with some semblance of regularity. A conflict in the evidence relates solely to the frequency of the purchase rather than to the fact of the purchase, and as I view it, the frequency of purchase is immaterial.

In Summers v. Summers, 40 Ill2d 338, 239 NE2d 795 (1968), the Supreme Court reviewed the origin and purpose of the guest statute (Ill Rev Stats 1965, c 95½, par 9–201 et seq.) and the court held, as a matter of law, that an owner-passenger in an automobile was not a guest within the meaning of the guest statute. In its discussion of the statute, the court clearly established a rule of strict construction of our guest statute as being in derogation of a common-law remedy.

The evidence in this case establishes that there was an arrangement for transportation; that the arrangement contemplated regular and continuous transportation to and from work; that the decedent regularly set aside money to purchase gasoline; that the arrangement was mutually advantageous from an economic point of view; and that the arrangement was initiated and continued entirely without reference to any social aspects or any gratuitous hospitality. As I view it, the decedent was a passenger as a matter of law. McNanna v. Gach, 51 Ill App2d 276, 201 NE2d 191 (1st Dist 1964). Therefore, I dissent from that portion of the opinion that reverses and remands this case for a jury determination of the decedent's status.