**Pauline Dirksmeyer, as Administrator of Estate of Virgil Dirksmeyer, Deceased, Plaintiff-Appellee, v. Milo Barnes, Defendant-Appellant.**

**Gen. No. 9,938.**

Opinion filed May 21, 1954. Re-
leased for publication June 7, 1954.

Du Hadway, Suddes & Davis, of Jerseyville, for ap-
pellant.

Schimmel & Schimmel, of Pittsfield, for appellee;
Clark Anderson, of Hardin, of counsel.

Mr. Justice Hibbs delivered the opinion of the court.
The appellee brought suit in the circuit court of
Calhoun county against the appellant for damages
occasioned by injuries to and death of appellee's in-
testate. The jury returned a verdict in favor of ap-
pellee in the sum of $9,900. Motions for judgment
notwithstanding the verdict and for a new trial were
denied and judgment was entered upon the verdict.

The complaint alleged that the plaintiff's intestate
was a pay passenger in the automobile of the defendant
and that the latter so carelessly and negligently drove
his car that it ran into a telephone pole about eight
feet from the edge of the pavement; that the defendant
drove at an unreasonable rate of speed contrary to

the statute, and propelled his automobile onto the shoulder at a time when his speed was so great that his car skidded and he negligently and carelessly lost control of the same which caused it to collide with the said telephone pole. There was no charge of willful and wanton misconduct.

The defendant-appellant here contends that the appellee failed: (a) to prove his decedent was a pay passenger and was therefore merely a guest towards whom the defendant owed no duty except not to willfully and wantonly injure him and (b) there was no proof of the negligence of the defendant.

The defendant, Milo Barnes, the plaintiff's decedent, Virgil Dirksmeyer, Dewey Barnes, Louis Howland, Marvin Howland, Wardell Willman and Raymond Smith worked in the Dow Chemical Company in Granite City. With the exception of Louis Howland all lived in the vicinity of Hamburg and Mozier in Calhoun county, a distance of eighty miles from their place of employment. Louis Howland lived at Wood River, a distance of twenty miles from the Dow Chemical plant. Sometime in April Dirksmeyer began riding with the defendant to and from work. The other occupants of the car also started to ride in the same automobile at approximately the same time. All paid the defendant at the rate of $2 a round trip, except Louis Howland who paid fifty cents. All were regularly employed five days a week and made their weekly payments to Barnes on Friday evening. Each made about $80 a week.

Appellant contends that under such state of facts the decedent was "a guest, without payment for such ride," within the contemplation of section 42-1 of the Motor Vehicle Act, being par. 58a, ch. 95½, Ill. Rev. Stat. 1951 [Jones Ill. Stats. Ann. 85.064(1)], and because there was no charge of willful and wanton misconduct in the complaint the court should have in-

501

structed the jury to return a verdict in his favor. The appellant further contends that unless the compensation paid for the transportation was actually agreed upon, any expense money paid not substantially commensurate with the cost of the transportation did not take the cause out of the guest status fixed by statute.

It has been repeatedly held by our courts and those of other states having a similar Act that a "guest" is one who the operator of a motor vehicle invites to ride with him as an incident of hospitality, companionship or the like without financial or other return except such casual benefits as may be extended as a part of ordinary courtesies; where, however, the relationship has a business aspect, as distinguished from a social one, which promotes the mutual interests of both the person carried in the motor vehicle and the driver, or, where the driver receives a tangible benefit monetarily or otherwise, which is the motivating influence for furnishing the transportation the rider is a passenger and the operator or owner is liable for ordinary negligence. (*Miller v. Miller,* 395 Ill. 273; *Connett v. Winget,* 374 Ill. 531; *Perrine v. Charles T. Bisch & Son,* 346 Ill. App. 321; *Whitmore v. French,* 37 Cal.2d 744, 235 P.2d 3; *Miller v. Fairley,* 141 Ohio St. 327, 48 N.E.2d 217; *Kelly v. Simoutis,* 90 N. H. 87, 4 A.2d 868.) In *Scholz v. Leuer,* 7 Wash.2d 76, 109 P.2d 294, it is said: "If there is payment for the transportation, the statute does not apply, and this does not mean that payment must necessarily be made in money. It is sufficient if the presence of the occupant directly compensates the operator or owner in a substantial and material or business sense as distinguished from mere social benefit or nominal or incidental contribution to expenses."

The defendant, decedent and the other five occupants of the automobile were all employed at the same industry eighty miles distant from the homes of

the defendant and five of them, and twenty miles from the home of the remaining one. The six occupants of the automobile paid an aggregate of $10.50 for each day's transportation, or $52.50 for a five-day week. The decedent paid $2 per day or $10 a week. These trips were not made for pleasure or social purposes. The arrangement or custom was not for an isolated, single or occasional transportation but had been in effect on the above paying basis for more than four months, five days each week. It comprehended continuous transportation to and from work. The amount of the payment, whether by agreement or custom was fixed, certain and substantial in amount. Even if inadequate, as appellant contends, it constituted an economic benefit to the defendant for the reason he was obliged to make the trip to reach his own place of employment.

██ ██ Appellant contends that in the absence of an express agreement the compensation paid must be substantially commensurate with the cost and hazard of the undertaking. Whether the payments made in this cause were by reason of an express contract, an arrangement or a custom is of little consequence. They had been made regularly for over four months and in the absence of evidence to the contrary it will be presumed that there was an agreement to pay the sums above specified for the transportation to work and return, and that such arrangement was mutually satisfactory to all of the parties, including the defendant. In the absence of an express agreement the monetary compensation paid is not the sole test by which the relationship is to be determined. The jury had a right to take into consideration all the facts and circumstances involved including the social or business aspects of the trip, whether it promoted the mutual interests of both parties, the motivating influence for

furnishing the transportation, and the economic benefit to the operator or owner.

Under the foregoing principles of the law and the facts in the record the jury was justified in finding that the decedent was a passenger of the defendant and not a guest.

It is further contended by the appellant that even though the plaintiff's intestate was a passenger for hire there was no proof of either the defendant's negligence or the due care of the decedent.

On August 28, 1951 at about 4:30 o'clock in the evening the defendant with his six passengers riding in a four-door sedan left their place of employment at Granite City on their homeward trip, traveling north on Route 67, a two-lane highway. There were three in the front seat, Barnes driving, Willman in the center and the decedent on the right, the remaining four being in the rear seat. At a point one mile from Hartford and 8 or 10 miles north of Granite City they approached a line of 6 to 10 cars going south on Route 67. It was then raining or drizzling rain. The pavement was wet. The shoulder at the east edge, somewhat wider than a car, was grassy and a little soft and wet. As the defendant's car, moving at 55 to 60 miles per hour, approached the string of cars, an automobile in the rear thereof, southward bound, pulled onto the northbound lane about five or six hundred feet north of the defendant's vehicle. Louis Howland said, "There comes a car." At the same time the defendant took his foot off the accelerator. When the two cars, traveling in the northbound lane, were from 100 to 300 feet apart, the defendant abruptly set his brakes. As a result, the car skidded and slipped and either skidded or was driven off the paved portion of the highway onto the east shoulder, traveled thereon for a distance of approximately 150 feet until the right rear end

struck a telephone pole 8 to 10 feet east of the east edge of the pavement and stopped a few feet north of such pole. In the meantime, the southbound car passed on the northbound lane.

The five passengers all testified for the plaintiff. One of them, Dewey Barnes, knew little about the accident except that the car slid off the pavement, hit the pole and turned around. Louis Howland testified that the car skidded off the pavement onto the shoulder and hit the telephone pole. Again he said that he did not know that the car skidded near the pole. The witness, Willman, said that the car skidded before it went off the pavement, skidded after it hit the shoulder and also skidded when the defendant tried to get back on the hard road. Marvin Howland testified that the defendant abruptly set his brakes and locked the wheels so that they were not spinning and kept his foot on the brake until they reached or about reached the telephone pole, during which time the car skidded part of the distance. Raymond Smith said that the appellant put the brakes on heavy, the car sliding and skidding and "he wrapped it around that telephone pole." Again he said that the car ran on the shoulder 100 or 150 feet, skidded and the back end hit the telephone pole. At another point in his testimony the witness in replying to a question whether the car was driven on the shoulder of the road said, "I wouldn't say he was driving. When he hit the brakes, he went into a spin."

It was stipulated that the decedent died as a result of the injuries received in the accident. The foregoing is the substance of the testimony of the five passengers in defendant's car, no part of which is disputed, except that the witness, James Klug, testifying on behalf of the defendant said he did not believe it was raining right at the time of the accident but the road was a little slick.

505

■ The complaint charged: (a) that the defendant carelessly and negligently drove the car so that it ran into the telephone pole; (b) drove at an unreasonable rate of speed, contrary to the statute; (c) drove onto the shoulder when his speed was so great that his tires skidded and negligently lost control thereof, which caused a collision with the pole. These questions were essentially for the jury to decide under all the facts and circumstances of the case. (*Petro v. Hines,* 299 Ill. 236; *Hannigan v. Chicago Motor Coach Company,* 348 Ill. App. 473.)

■ It is contended by the appellant that he was driving at his usual rate of speed and no witness testified that such speed was unreasonable. Attention is also directed to the proposition that a driver of a vehicle faced with a sudden emergency and imminent peril is not required to use the same degree of care and judgment as when there is no such peril, but is only required to act as an ordinary prudent person would under similar circumstances, that his acts are not to be judged in the light of after-events, but by the standard of what a prudent person would have been likely to do under all the circumstances. The reasonableness of the speed of appellant's car is not to be determined by the fact that he was driving at his usual speed but is to be determined by the jury in the light of all the facts and circumstances in the case. The existence of a sudden emergency or imminent peril does not excuse the driver of the vehicle from using that degree of care and caution which an ordinary prudent and careful person would have exercised under the like facts, circumstances and emergency, and whether such degree of care and caution was so exercised was for the jury to determine. (*Hicks v. Swift & Company,* 285 Ill. App. 1.)

■ ■ Some mention is made in the appellant's argument that the decedent was not in the exercise of

due care and caution for the reason that he was riding in the front seat and did not warn the driver of the approach of the oncoming car in the wrong lane, or protest the speed at which he was driving. The record shows that Willman, riding in the front seat between the driver and the decedent, spoke up and said, "There comes a car." Further caution by any of the other occupants of the car was not only unnecessary but would tend to confuse the driver. It is suffice to say that the question of due care of plaintiff's intestate was also a question for the jury.

██ ██ Whether defendant had complied with sec. 42a of the Motor Vehicle Act (par. 59, ch. 95½ Ill. Rev. Stat. 1951 [Jones Ill. Stats. Ann. 85.057]) relating to carriage of passengers for hire, by filing with the Secretary of State a bond or insurance policy, as therein provided, is immaterial. The violation of the statute, if any, cannot be successfully urged unless it was the proximate cause of the injury to and death of the decedent. (*Lewis v. Bertero,* 194 Wash. 186, 77 P.2d 786; 60 C. J. S. Sec. 134.) Neither is such section a measuring instrument for the purpose of determining the meaning of the term "guest, without payment for such ride" as used in Sec. 42–1.

██ ██ We are unable to say that the court should have directed a verdict for the defendant or that the verdict of the jury is contrary to the manifest weight of the evidence.

██ The defendant tendered an instruction which told the jury in substance that to constitute decedent a pay passenger plaintiff must prove by a preponderance of the evidence that there was an arrangement with the defendant to pay for transportation as such and "that in the absence of such arrangement payment of any sum by said decedent to the defendant, Milo Barnes, not substantially commensurate with the cost of such transportation would not constitute the dece-

dent a passenger at the time charged in the complaint."
The court modified it by striking out the phrase above
quoted and gave to the jury the instruction as so modi-
fied. There was uncontradicted evidence in the record
that there was an arrangement between the decedent
and the defendant to pay $2 for each round trip, being
the same arrangement as existed between the other
riders living in the vicinity where the decedent and
defendant lived. The portion of the instruction stricken
by the court was not a correct statement of the law and
would only have tended to mislead the jurors. Further-
more, the instruction as modified correctly stated the
law as applied to this case.

The defendant was sworn and placed upon the wit-
ness stand, gave his name, place of residence, where he
worked and when he commenced working. He was then
asked, "From April, 1951 to August, 1951 were you
driving your car to work?" An objection was made to
the defendant testifying against the administrator and
the court thereupon ruled as follows: "Under the rules
of evidence and the law, where a person is being sued
by an administrator in a representative capacity,
generally speaking, the person who is being sued under
the law is not competent to testify in the case, generally
speaking, and that is the purpose of the ruling in this
instance. The objection is sustained." The defendant
thereupon rested his case. The court was not informed
as to what the defendant would testify to nor was there
any offer of proof made. Appellant contends that by
virtue of the fourth exception to Sec. 2 of the Evidence
and Depositions Act, par. 2, ch. 51, Ill. Rev. Stat. 1951
[Jones Ill. Stats. Ann. 107.068] he should have been
permitted to rebut the testimony of plaintiff's wit-
nesses on the subject of payments for transportation
to and from work.

 The question now presented to this court
as a ground for reversing the cause was never pre-

sented to nor ruled upon by the trial court. It is plain from the statement of the court when the ruling was made that the objection was sustained on the ground that in general the witness was not competent as against the administrator of the estate of the decedent. In order to preserve the question for review in this court, counsel for the appellant should have advised the court as to what he expected to prove by the witness or made an offer of proof so that the trial court could ascertain and determine whether the proposed testimony was competent under any of the exceptions to the rule laid down in said sec. 2. (*Owens v. Guerney,* 241 Ill. App. 477; *Skomoroske v. Marcotte,* 255 Ill. App. 1.) Moreover, the rule that a point not raised in the trial court cannot be urged on appeal is so academic that the citation of authorities is wholly unnecessary.

The judgment of the circuit court of Calhoun county is affirmed.

*Judgment affirmed.*