Thelma E. Cunningham, Administrator of the Estate of Donald D. Cunningham, Deceased, and Thelma E. Cunningham, Individually, Plaintiffs-Appellees, v. Central & Southern Truck Lines, Inc., a Corporation, and William T. Shaver, Defendants-Appellants.

Gen. No. 67–31.

Fifth District.

December 31, 1968.

Gosnell & Benecki, of Lawrenceville (Edward Benecki and Charles Quindry, of counsel), for appellants.

Roscoe D. Cunningham, of Lawrenceville, for appellees.

DOVE, J.

About ten-thirty o'clock on the evening of November 21, 1964, Donald D. Cunningham, accompanied by Ross Montgomery, his employee, was driving his G. M. Tractor and attached semitrailer, loaded with oil field pipe, in an easterly direction on U. S. Route 50 in Lawrence County. Coen Reed, also an employee of Cunningham, was driving a pickup truck belonging to Cunningham in an easterly direction on Route 50, to the rear of the tractor-trailer

driven by Cunningham. West of the pickup truck, and also proceeding east on the same highway, William T. Shaver was driving a tractor-trailer belonging to defendant, Central and Southern Truck Lines, Inc. The truck driven by Cunningham made a right turn off of U. S. Route 50 into a gravel road leading south, referred to in the record as Gulf Oil Road. The truck driven by Shaver came in contact with the truck driven by Cunningham, or the pipe loaded thereon, and as a result of the impact, Mr. Cunningham was pushed forward in the cab and against the steering gear, receiving injuries from which he died the following afternoon.

Thereafter a two-count complaint was filed in the Circuit Court of Lawrence County by Thelma E. Cunningham, widow of Donald D. Cunningham, and against Central and Southern Truck Lines, Inc., the owner of the truck involved in the collision, and against Wm. T. Shaver, its driver. The first count of said complaint was brought by Thelma Cunningham, in her representative capacity as administrator of the estate of Donald D. Cunningham, and sought to recover for the alleged wrongful death of Cunningham. In the second count she, individually, sought to recover the damages she sustained in the payment, by her, of her husband's funeral expenses.

The defendants filed a joint answer admitting some of the allegations of the complaint, but denying all of the alleged charges of negligence. The corporate defendant, Central and Southern Truck Lines, Inc., filed a counterclaim and thereafter an amended counterclaim, which alleged, among other things, that counterdefendant's intestate, Donald D. Cunningham, in making the right turn, caused the rear portion of his trailer "to be on the left half of the roadway obstructing the path of counterclaimant's motor vehicle," and that when he, Cunningham, turned the tractor and trailer he was driving onto the intersecting highway, he left "extending out onto the paved portion of the highway and across the center line

250

into the left traffic lane, approximately seven feet of iron oil field casing with no light of any kind thereon to warn drivers of vehicles following, of the presence of said pipe."

The issues made by the pleadings were submitted to a jury, resulting in a verdict for the plaintiff on count two for $1,179. On count one, the jury found for the plaintiff, administrator, and assessed damages at $50,000 and apportioned them as follows:

To Thelma E. Cunningham.......$20,000
To Timothy Dee Cunningham..... 10,000
To Scott Nelson Cunningham..... 10,000
To Laura Marie Cunningham..... 10,000

The jury found against the corporate counterclaimant on its counterclaim and answered a special interrogatory finding that Donald D. Cunningham was in the exercise of ordinary care for his own safety at the time of, and immediately prior to, the collision. Upon the return of the verdicts, the court entered judgment on count two for the plaintiff, and against the defendants, for $1,179, and upon its own motion entered judgment for the plaintiff on count one and against both defendants for $30,000, and apportioned the judgment among the parties in interest as follows:

To Thelma Cunningham..........$12,000
To Timothy Dee Cunningham..... 6,000
To Scott Nelson Cunningham..... 6,000
To Laura Marie Cunningham..... 6,000

The post-trial motion of defendants was subsequently heard and overruled, and defendants appeal.

The evidence is that on November 21, 1964, Donald D. Cunningham was engaged in the oil field contracting business in Lawrence County and surrounding area, and had been so engaged for some time, and that Ross Montgomery and Coen Reed were two of his employees. At the direction of Cunningham, Messrs. Reed and Montgom-

251

ery took a G. M. Tractor and semitrailer belonging to Cunningham to Clay City, Illinois, and there picked up a load of oil field pipe casing, which was to be delivered by them to a well site in the Bridgeport area. They arrived in Clay City about 2:30 o'clock in the afternoon, and after loading their truck proceeded to their destination. They had some mechanical trouble with the truck, and at Noble, Illinois, they stopped and phoned their employer, Donald D. Cunningham, and he came in his pickup truck and did some work on the truck, which up to this point had been driven by Montgomery. Mr. Montgomery refused to drive any further, and when the truck and semitrailer left Noble about eight o'clock in the evening, it was being driven by Cunningham and Montgomery accompanied him, riding in the cab of the truck to the right of, and beside, Cunningham. After leaving Noble they stopped twice and Cunningham and Montgomery did some further work on the truck. The Gulf Oil Road intersects Route 50 about two miles west of the Bridgeport intersection, and runs in a southerly direction. When Cunningham, accompanied by Montgomery, reached a point approximately 1,000 feet west of the Gulf Oil Road, the evidence is that Cunningham gave a right turn signal. At that time the pickup truck, driven by Coen Reed, was proceeding easterly on Route 50 some 200 or 250 feet to the rear of the truck being driven by Cunningham, and to the rear of this pickup truck driven by Reed, proceeding in an easterly direction, was the truck of defendant, Central and Southern Truck Lines, Inc., being driven by defendant, Wm. T. Shaver.

Mr. Montgomery, who was in the cab of the truck being driven by decedent, was called as a witness for the plaintiffs, and he testified that he was 31 years of age, and that prior to November 21, 1964, he was employed by Cunningham as an operating engineer, and had been for four or five months; that at about 2:30 o'clock on the afternoon of that day he and Coen Reed, at the

direction of Cunningham, loaded fifty-five 5½-inch casing pipe on the GMC tractor and flatbed trailer belonging to Cunningham; that the length of each pipe was 31 feet, 9 inches; that 13 pipes made up the bottom row on the bed of the truck; 12 pipes were in the second row; 11 on the third row from the bottom; 10 on the fourth row; and 9 on the top or fifth row; that each row had one less, because the pipes, as one witness expressed it, "set in the groove of the other pipe as they are stacked and the collars (or couplings) are staggered so they will fit." After being so loaded, the pipes were fastened on the trailer by three log chains and boomers. The overhang of the pipe at the front of the semitrailer and back of the cab was two feet, and the overhang at the rear of the semitrailer was four feet.

Mr. Montgomery further testified that as they proceeded east on Route 50 toward the Gulf Oil Road intersection, they were going between 45 and 50 miles per hour; that he observed through the rearview mirrors that Coen Reed was driving the pickup truck, which was to their rear, about 200 or 250 feet; that the tractor in which he was riding slowed down to five miles per hour to make the right turn off of main Route 50 and into Gulf Oil Road; that at the time of the impact the left rear wheel of the attached trailer was on the pavement, and that the right wheel of the trailer was either off the pavement or just at its edge; that he did not realize that a vehicle had struck the tractor-trailer in which he was riding, but "thought the boomers had broke loose and had let the pipe go forward and unload."

Mr. Montgomery further testified that there was a light on each corner of the bed on the rear of the Cunningham trailer, and a bar light in the center consisting of three lights, and turn signal lights were located on each side of this bar light; that the signal lights at the rear were on the same circuit with the tractor lights, and that all these lights, as well as the lights on the tractor,

253

were functioning on the night in question. He also testified that there was no light or lantern attached to any of the pipe which extended over the rear end of the trailer, but a couple of red flags had been attached to the ends of the pipe. As a result of the collision, all of the casing pipe fell from the trailer and came to rest south of the pavement and east of the traveled portion of Gulf Oil Road. The tractor-trailer unit driven by Shaver stopped on the north side of the pavement on Route 50, headed east.

On direct, as well as in his cross-examination, this witness was positive that none of the pipes on the truck, as it made the right turn from Route 50 into Gulf Oil Road, extended into the westbound traffic lane on Route 50, and that when it stopped on Gulf Oil Road, the rear of the semitrailer was six feet and seven inches south of the south edge of the pavement. He further testified that after the Cunningham truck stopped, he, Montgomery, got out of the cab, walked to the driver's side and observed that Mr. Cunningham's body was "jammed in between the steering wheel and the back of the truck"; that he then lifted him from the cab, and shortly thereafter he was removed to the hospital at Lawrenceville.

Counsel for appellants insist that the trial court erred in refusing to permit defendant, Wm. T. Shaver, to testify, and argue that inasmuch as Montgomery testified on behalf of the plaintiffs to the transaction between the defendant Shaver and decedent, that, in order to place the parties on an equal footing, defendant Shaver should have been permitted to testify to the same matters concerning which Montgomery testified. Counsel say that the evidence discloses that Montgomery was at the time of the occurrence in question, an employee and agent of decedent, and engaged in the transaction of his business; that at the time of the occurrence and prior thereto Montgomery was in the cab of the tractor then being driven by decedent, and testified on behalf of plaintiffs

as an occurrence witness, and having so testified, Shaver became a competent witness to testify to the same transaction, and was not barred by any of the provisions of the Evidence Act.

The applicable sections of the Evidence Act (Ill Rev Stats 1967, c 51, § 2), are:

> "No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, . . . when any adverse party sues or defends as . . . administrator, heir, legatee or devisee of any deceased person, . . . unless when called as a witness by such adverse party, so suing or defending, and also except in the following cases, namely:
>
> ". . .
>
> "Second, when in such action, suit or proceeding any agent of any deceased person shall, in behalf of any person or persons suing, or being sued, in either of the capacities above named, testify to any conversation or transaction between such agent and the opposite party or party in interest, such opposite party or party in interest may testify concerning the same conversation or transaction."

█ It is true that at the time of the occurrence in question Montgomery was in the employ of Cunningham, but he did not testify to any conversation he had with Shaver. The transaction about which he testified had to do with the collision of two motor vehicles, one driven by Shaver, and the other driven by decedent, in which Montgomery was riding. This was not a transaction between Montgomery and the defendant Shaver and his employer, as contemplated by the statute, but the transaction was between Montgomery's employer, Cunningham, the decedent, and defendant Shaver, and his employer,

255

Central and Southern Truck Lines, Inc. It is only when an agent testifies to a transaction between himself and the opposite party, that the opposite party may testify concerning the same transaction. (Moore v. Botto, 159 Ill App 322.)

■ In an action by an administrator of a deceased driver of a motor vehicle against the owner and driver of a truck which struck decedent's automobile, thereby causing intestate's death, the truck driver is not a competent witness (Schampon v. Speis, 285 Ill App 23, 25, 1 NE2d 499), but where an administrator sues in his individual capacity rather than in his representative capacity, a party interested is not incompetent to testify on his own motion. If the adverse party does not sue as administrator of a deceased person, an interested party defendant is not incompetent to testify. (37 ILP, Witnesses, § 48.)

■■ In the instant case, by count one Thelma Cunningham, in her representative capacity, as administrator of the estate of her deceased husband, sought to recover for his alleged wrongful death. Defendant, William T. Shaver, as to the issues made by the pleadings as to this count, was an incompetent witness to testify in his own behalf, and upon this record, as to this count, the ruling of the trial court was correct. By the second count, however, Thelma Cunningham sought to recover the damages she individually sustained, in the payment by her of her husband's funeral expenses, and as to this count, defendant William T. Shaver was a competent witness.

■ The record discloses that at the conclusion of plaintiffs' case, counsel for plaintiffs suggested a conference in chambers. At this conference counsel for plaintiffs stated that they would invoke section 2 of the Evidence Act as a bar to the testimony of defendant, Shaver, and requested the court to instruct counsel for appellants not to place defendant Shaver on the witness

stand. Counsel for defendants stated that it would be prejudicial to defendant not to attempt to have this witness testify. The court then said: "You may make your objection at the time the witness takes the stand, and I will rule on the motion at that time." At the resumption of the hearing the next morning, counsel for defendants called Mr. Shaver as their first witness, and he was sworn. Thereupon counsel for plaintiffs said: "Your Honor, inasmuch as the plaintiffs bring this action as administrator, we ask that the witness be barred from testifying." The court then stated: "All right, I will grant the motion," and counsel for defendants called another witness.

To sustain the ruling of the trial court, counsel for appellees argue that when defendant Shaver was tendered as a witness, it was the duty of counsel for appellants to make an offer of what they expected to prove by him, and by failing to do so, they have waived their right to insist upon this error, and counsel cite Dirksmeyer v. Barnes, 2 Ill App2d 496, 119 NE2d 813.

The Dirksmeyer case was an action brought by an administrator. At the conclusion of plaintiff's case, defendant was called as a witness to testify on his own behalf and was sworn, took the witness stand, gave his name and place of residence and to the next question an objection was made by counsel for the plaintiff to the defendant testifying against the plaintiff, administrator, and this objection was sustained. In affirming a judgment for the plaintiff, the Appellate Court said that the ruling of the trial court was correct, because counsel for defendant had not informed the court as to what the defendant would testify to, or made any offer of proof, so that the trial court could ascertain and determine whether the proposed testimony was competent. The record in the instant case discloses that at the close of plaintiff's case, counsel for the plaintiffs, at a conference in chambers stated that "the plaintiff will avail herself

of the protection of section 2 of the Evidence Act and will invoke same as a bar to testimony by the defendant, William T. Shaver, and accordingly, we ask the Court that defendant's counsel be instructed not to place William T. Shaver on the stand. We think it would be highly prejudicial to the plaintiff's interest." Counsel for defendants then said it would be equally prejudicial to the defendant not to attempt to have this witness take the stand and testify in his own behalf and suggested that an instruction would adequately explain to the jury why defendant was not permitted to testify. At the conclusion of the colloquy in chambers the Court said he thought an instruction would be adequate: that it was necessary for counsel to invoke the rule at the proper time; that counsel could make his objection at the time the witness takes the stand and that he would rule on the motion at that time. Upon convening court the following morning the record shows that when Mr. Shaver's name was called as a witness, he was sworn, but before any question had been directed to the witness, counsel for plaintiffs addressed the court, stating: "Inasmuch as the plaintiffs bring this action as administrator we ask that the witness be barred from testifying." The court then replied: "All right, I will grant the motion." Counsel for defendants then called another witness.

The trial court fully understood the character of the evidence defendants would seek to elicit from defendant, Shaver, had he been permitted to testify. The motion of counsel for appellees, interposed immediately after he was sworn, was that the defendant, Shaver, "be barred from testifying." His testimony as to the occurrence under Count one of the complaint, was incompetent but under the second count he was a competent witness and the court erred in sustaining appellees' motion. Although there was no merit in counsel for appellants' contention, in chambers, that because Montgomery was the agent and servant of decedent, and had testified on behalf of

the plaintiffs, that the so-called "Dead Man's Rule" did not apply to defendant, Shaver, there is, under the facts disclosed by this record, no merit in appellees' contention of waiver. The record in this case is distinguishable from the records in the Dirksmeyer case and the other cases relied upon by counsel for appellees.

Counsel for appellants also insist that the trial court erred in admitting in evidence a diagram identified as Plaintiffs' Exhibit No. 11, prepared by Charles E. Carr. This exhibit was a pen and ink drawing depicting a flatbed trailer and the cab of a tractor to the rear of the trailer. The exhibit was a large white cardboard three feet wide and five feet long. A black line appearing at the bottom of the exhibit was intended to indicate the surface of a pavement. The two circles, one within the other, represented the right rear wheel of a flatbed trailer. Above this wheel are five horizontal lines, representing the pipe loaded on the trailer. Above the 5th horizontal line is another horizontal line extending the entire length of the exhibit and six perpendicular lines, one indicating the back end of the tractor, one indicating the front end of the trailer, and one indicating the rear end of the pipe, and one indicating the top of the cab of the tractor which was being driven by defendant Shaver at the rear of the flatbed trailer.

At the end of each of these five solid lines are broken lines, (– – – – – –), and the distance from the rear end of the trailer to the end of the broken lines is indicated as six feet and one inch. Other numbers appear on this exhibit, one indicating that the distance from the end of the bed of the trailer to the end of the pipe loaded thereon is four feet. A horizontal line indicates that the top of the seat in the tractor cab is the same distance from the surface of the highway as the bed of the trailer (4 feet and 6 inches), and beginning at a point two feet and six inches above this line there appears a straight,

slanting line to a point representing a light at the left rear side of the flatbed of the trailer.

Charles E. Carr testified on behalf of the plaintiffs, and stated that he prepared this exhibit from estimates which he had made and from photographs, and from what he had been told. He further testified that this exhibit was prepared on a scale of one inch equals one foot; that it represents a flatbed, single rear-axle trailer being approached from the rear by another truck. He testified that the figures "4' 6''''" and "2' 6''''" appearing on the exhibit indicated that the eye level of the driver of the approaching truck was seven feet from the road surface; that the figures "4' 6''''" indicated the height of the end of the trailer; that the figures "26' 0''''" represented the length of the trailer bed; that the figures "4' 0''''" indicated the pipe overhang and that the figures "6' 1''''" indicated a projected pipe overhang of six feet and one inch.

This witness further testified that he had not measured Shaver's tractor or seat level or Shaver's eye level when seated in the truck he was driving but the slanting straight line beginning at the indicated eye level of the driver of the Shaver truck ends at a light located at the rear of the trailer one foot below the top of the bed of the trailer and recessed nine inches forward.

This witness further testified that with a four-foot pipe overhang on the trailer, an approaching truck must be within 15 feet and 3 inches of the rear end of the trailer before the overhang would block the driver's vision of the light on the rear of the trailer, and with a six-foot, one-inch overhang, the approaching truck must be within 22 feet, 3½ inches of the rear end of the trailer before the line of vision to the rear light of the trailer would be blocked by such overhang.

Mr. Carr further testified that he was a Lawrence County oil producer, maintaining an office in Lawrenceville, and that he had completed a 27-month course in

260

radio engineering. He testified that he had ordered the pipe which Cunningham and Montgomery were hauling from Clay City to his well location near Bridgeport; that he went to the intersection where the collision occurred the following morning, observed the pipe strewn along the shoulder of the paved portion of Route 50, inspected the pipe, described the condition thereof, and expressed the opinion that the condition of the pipe indicated to him that the force which damaged the pipe had been applied to the pipe ends in line with the pipe.

There is evidence in this record describing the trailer truck driven by defendant Shaver which this drawing was intended to illustrate. Ross Montgomery had testified that the length of the Cunningham trailer was 26 feet, and that he estimated that the height of the bed was four feet and six inches and that the pipe overhang at the rear of the trailer was four feet. The projected six-feet, one-inch overhang shown on Exhibit 11 was based, according to appellees' brief, not upon any evidence, but upon what appellants' counsel said in his opening statement that he intended to prove. There is no evidence as to the distance of the lights below the bed of the trailer truck or the dimensions of the wheels, the flexibility of the springs, or the effect of an eleven-ton load on the springs and tires. This exhibit was not based upon any measurements made by the person who prepared it, or measurements of the vehicles involved, before or after the occurrence, but upon information furnished the witness who prepared it, by others.

■ Mr. Carr had no training in drafting, and he was permitted to use his drawing, Exhibit 11, to justify and reinforce his conclusions. The slanting line on this exhibit running from the assumed eye level of Mr. Shaver to the point indicated as a rear light on the tractor trailer emphasized Mr. Carr's conclusion that the defendant Shaver, could have easily observed the lights on the rear of the Cunningham truck. This opinion, and

261

others which this witness expressed, clearly invaded the province of the jury and were highly prejudicial. Drawings and diagrams which illustrate the subject matter of testimony may be received into evidence for the purpose of showing a particular situation, explaining the testimony or enabling the jury to apply the testimony more intelligently to the facts shown (Smith v. Sanitary Dist. of Chicago, 260 Ill 453, 103 NE 254; Department of Public Works and Buildings v. Chicago Title & Trust Co., 408 Ill 41, 95 NE2d 903).

In Pratt, Read & Co. v. New York, N. H. & H. R. Co., 102 Conn 735, 130 A 102, it appeared that the plaintiff had paid, through its insurance carrier to one of its employees, Rogers, compensation which had been awarded him for injuries he had sustained when a passenger in a motor bus while being transported to the company's place of business, such transportation being a part of Rogers' wages. This action was brought by Rogers' employer to recover for injuries Rogers received when the motor bus in which he was riding with other employees collided at a grade crossing with a passenger train operated by the defendant. The defendant recovered a judgment and the plaintiff appealed. The Supreme Court of Errors of Connecticut reversed the judgment because of erroneous instructions. It appeared that upon the trial a map, identified as defendant's exhibit 1, made by the engineer of the train involved in the collision was offered and admitted in evidence over plaintiff's objection. In its opinion the court referred to the exhibit and said:

> "Rulings upon evidence are not erroneous except in one instance. Defendant's Exhibit 1, a map made by its engineer, and representing the locus at the time of the accident, and containing a number of lines thereon representing lines of vision was admitted in evidence over plaintiff's objection and exception. The lines of vision had no place upon the map. It appears that they were testified to by the engineer.

Placing them upon the map before it was introduced in evidence gave them undue prominence over other oral testimony, since the map as an exhibit went to the jury room. The matter was one within the sound discretion of the Court. Under the circumstances of this case, its admission was not harmful error."

■ In the instant case the exhibit prepared by Mr. Carr depicted the relative positions of the trailer truck, which decedent was driving and the tractor driven by defendant Shaver. It singles out these two motor vehicles. The evidence is that the pickup truck driven by Coen Reed was 200 or 250 feet to the rear of the Cunningham truck when it started to make its right turn into Gulf Oil Road. There is no evidence in the record that the truck driven by Mr. Shaver ever occupied the position on the highway depicted by Mr. Carr on this exhibit. This map went to the jury room. It gave undue prominence to Mr. Carr's testimony and indicated by lines and numbers, the conclusions of the witness who prepared it. The admission of this exhibit in evidence, together with the court's ruling with reference to defendant Shaver's competency as a witness, necessitates a reversal of the judgments appealed from. (Ficht v. Niedert Motor Service, Inc., 34 Ill App2d 360, 370, 371, 181 NE2d 386).

It is also insisted that the Court erred in refusing to sustain objections to questions propounded by counsel for plaintiffs to Joe Muire, a witness called by plaintiffs, and also erred in sustaining an objection by counsel for defendants to a question propounded by counsel for defendants to Wilfred Gibson, a witness called by the defendant. Mr. Gibson testified that he was an Illinois State Police Trooper, and had received training for his work at the Illinois State Police Training Academy at Springfield; that he had been a Trooper for eleven years, and during that period he had investigated 528 collisions. He further testified that while on duty at Lawrenceville the evening of the occurrence, he learned of this accident,

and immediately went to investigate. He stated that the rear end of the Cunningham tractor-trailer was in the gravel road six feet and seven inches from the paved portion of Route 50, facing south; that the other involved truck was standing 43 feet east of the east edge of the gravel road; that the tractor portion of this vehicle was on the north shoulder of Route 50, and the back wheels were on the paved portion of Route 50, extending into the west traffic lane five or six feet; that he observed the pickup truck driven by Coen Reed, and talked to both Reed and Shaver; that he examined the lights on the Cunningham truck involved in the collision, and tested them by the activating switch, and all of them, including the taillights and the turn signal lights, worked; that the stoplight was not tested because it was activated by the brake pedal, and due to the damage to the cab, he was unable to do so. This witness, without objection, testified that from his investigation, the point of impact was in the eastbound lane of traffic, and concluded, "the truck was turning off on the gravel road and the point of impact would have been between the east and west edge of the intersection on the cement."

 Mr. Gibson further testified that there was no debris on the highway, but that he observed skid marks leading to defendant's truck; that these skid marks were 75 to 80 feet in length and began in the eastbound lane of traffic and that they went in a northeasterly direction. Toward the end of his direct examination by counsel for defendants, he was asked: "Now, Officer Gibson, did you form an opinion, based upon your training as an Illinois State Highway Patrolman, in your eleven years' experience in the investigation of accidents, and the investigation you conducted in this specific accident, did you form an opinion as to how these vehicles came to collide at this intersection?" This question invaded the province of the jury, and the court promptly and properly sustained an objection thereto. We have examined the

transcript of the record, and read therefrom all the testimony of Mr. Gibson and Mr. Muire, and find no reversible error in the rulings of the trial court.

 On the second day of the trial the three children of the plaintiff, Thelma E. Cunningham, aged 6, 9 and 12, were present in court. The record shows that, in chambers, counsel for defendants called the attention of the court to this fact, and stated that the only purpose of their being in the courtroom would be to arouse sympathy on the part of the jury, and requested the court to "instruct counsel for the plaintiffs to instruct the children to go home, since their presence is not necessary to the issues in this cause." The court stated that anyone is entitled to be in the courtroom, and that he saw no necessity to entirely exclude them from the courtroom, but that they would continue to be seated with other spectators. The court adequately protected the rights of everyone by its ruling.

It is also argued that the trial court erred in refusing to give one instruction tendered by defendants, and erred in giving to the jury six instructions tendered by the plaintiffs. The record shows that at the conference on instructions thirteen instructions were tendered by counsel for defendants. Twelve of these instructions were given without objection. When the court took up for consideration the 13th tendered instruction by defendants, counsel for defendants stated: "This instruction is submitted to the court tentatively only, even though it is our instruction, for the purpose of the court determining the form in which it should be. It is prepared more on the pleadings than it is on the evidence. We, ourselves, have objections to it. Some of the acts of negligence, as taken from the complaint, do not apply to the facts of this occurrence. We reserve the right, at this time, to re-do it, even though it was prepared for us. We think it should be revised in this respect in regard to the first paragraph."

Counsel for defendants then stated that paragraphs 2 and 3 should not be included in this instruction, and that certain allegations on page 2 of the instructions should be omitted, and then said: "Turning to the third page of defendant's instruction 13, which instruction is tendered at this time purely for the court's consideration, and revision, we believe . . . ." At this point, after counsel for defendants had criticized his own instruction in language covering 2½ pages of the transcript, the court interrupted and said: "I will sustain your objection as to the first word of the second line of the first subparagraph on page 3." Counsel for defendants then said: "The court has indicated that he will give defendants' tendered instruction 13 in the form in which it was presented to the court for its consideration, and defendant has objected, and the court has overruled the objections to the instruction. Is that correct?" The court replied: "Yes, I have." Counsel for defendants then said: "If the court itself desires to give instruction 13 as its own instruction, we have no objection, and if the court gives it as its own instruction, may we renew our objection?" Counsel for plaintiffs then said: "It is his own instruction." The court then concluded the discussion with reference to defendants' tendered instruction 13, by saying: "I know, but it will be given as the court's instruction. I will show it given over objection."

In insisting that it was error to give this instruction, counsel for defendants state that counsel for plaintiffs had submitted an issue instruction which the court had refused; that in submitting this instruction counsel for defendants did so "for the sole purpose of aiding the court in determining the final form which it should take."

■■■ At the conference on instructions the trial court was tendered this instruction by counsel for defendants, had patiently listened to counsel criticize his own composition, and finally heard counsel who tendered the instruction state, "If the court desires to give instruction

266

13 as its own instruction, we have no objection." In view of the record, defendants are in no position to complain of the action of the trial court in giving this instruction, or in its rulings on the other instructions complained of.

For the errors indicated, the judgment of the Circuit Court of Lawrence County is reversed, and this cause remanded for a new trial.

Reversed and remanded.

EBERSPACHER, J., concurs.

MORAN, J., dissenting:

The majority has ordered a new trial in this case because of the trial court's refusal to allow defendant William T. Shaver to testify and because of the claimed erroneous admission of Exhibit No. 11 prepared by Witness Carr.

Defendant for all practical purposes conceded in the trial court that Shaver was disqualified from testifying and therefore should not be permitted to raise this question in this court. At the end of plaintiff's testimony and before plaintiff had rested his case, plaintiff, in chambers, announced to the court that he would invoke section 2 of the Evidence Act as a bar to Shaver's testimony. In answer, defendant's counsel in so many words admitted that Shaver was an incompetent witness, his only contention being that plaintiff's motion was premature and that plaintiff would have to make his objection when Shaver was offered as a witness. Defendant's counsel stated, "The right to invoke Section 2 of the Evidence Act is the right the plaintiff is entitled to in this cause, and we must exercise that right at the proper time." After this conversation and after defendant had made another objection, the court discharged the jury to be reconvened at 9 o'clock the next morning. The court reconvened the next day at 9:45 a. m., with both counsel present and the jury in

267

the box. The court then announced that plaintiff had rested his case. The defendant then called Shaver as his first witness. He was sworn. Plaintiff: "Your Honor, inasmuch as the plaintiff brings this action as administrator, we ask that the witness be barred from testifying." The Court: "All right, I will grant the motion." Defendant: "The defendant and counterplaintiff would like to call defendant's next witness." At this state of the proceeding it was incumbent on the defendant to urge upon the trial court some reason why the defendant was qualified to testify, but he said nothing.

At no time in the trial was the trial judge or opposing counsel notified of the contention that defendant now makes in this court—that is, that Shaver was qualified to testify against Mrs. Cunningham on Count II. If he had, I am sure plaintiff's counsel would have dismissed Count II since there was only $1,149 involved. Instead, both parties accepted as true the fact that Shaver was disqualified generally to testify. Under these circumstances we should follow the rule that a point not raised in the trial court cannot be urged on appeal. Dirksmeyer v. Barnes, 2 Ill App2d 496, 119 NE2d 813; Ragen v. Bennigsen, 10 Ill App2d 356, 135 NE2d 128; Daily v. Meredith, 56 Ill App2d 230, 205 NE2d 640. I cannot agree that at any place in the record counsel for defendant in any way or at any time urged in the trial court that Shaver was a competent witness for any reason. In fact, this must have been a complete afterthought, because he did not urge it in his original post-trial motion, but did by amendment to his post-trial motion.

I also disagree with the conclusion that Carr was not qualified to testify as an expert. To be an expert, one must have qualifications superior only to that of the general public in the particular field in which he is testifying. Qualifications are almost always a problem exclusively for the trial court unless such qualifications are so bad that it is an abuse of discretion to permit

such testimony as an expert. See Gard on Evidence, Rule 219. The record discloses that drafting was a regular part of Carr's employment for sixteen years and he functioned as a petroleum engineer whereby he had to be able to make maps, surveys and do all types of drafting work. Therefore, the trial judge did not abuse his discretion in allowing Carr to testify as an expert.

The testimony of Carr as to the length of the trailer, the location of the lights, and the height of the bottom of the trailer was proper—assuming that there was no testimony in the record as to what these actual distances were—because he testified that he knew the size of the wheel and from this he could make this schematic drawing from plaintiff's exhibit No. 2, which was admitted into evidence without objection. Disregarding his testimony that he could determine the distance involved when he once knew the size of the wheel, there was other testimony in the record which substantiated the drawing.

Assuming that the exhibit was not accurate in all details, I still do not think it was error to admit it. This exhibit was in the nature of demonstrative evidence, the purpose of which was to make more clear to the jury the contentions of the plaintiff. Great latitude has been allowed in the admission of such exhibits and the admission or rejection of such evidence has universally been held to be within the discretion of the trial court. This is true even when the drawings have not been completely accurate. See annotation in 9 ALR2d 1044. In Department of Public Works and Buildings v. Lotta, 27 Ill2d 455, 189 NE2d 238, at p 458, our Supreme Court said that whether a map constitutes a fair representation of the facts is a matter for the trial judge to decide in the first instance.

For the foregoing reasons, I dissent from the majority opinion.