2 Ill. App.3d 127 (1971)
276 N.E.2d 77
BENJAMIN PREMACK, Plaintiff-Appellee,
v.
CHICAGO TRANSIT AUTHORITY, et al., Defendants-Appellants.
No. 54987.
Illinois Appellate Court  First District.
October 20, 1971.
*128 *129 George J. Schaller, O.R. Hamlink, Jerome F. Dixon, and Edmund J. Burke, all of Chicago, attorneys for appellants.
David Alswang, of Chicago, for appellee.
Judgment affirmed.
Mr. JUSTICE BURMAN delivered the opinion of the court:
Plaintiff, Benjamin Premack, commenced this action against the defendants, Chicago Transit Authority and Napoleon Smith, the bus driver, for personal injuries allegedly sustained while he was a passenger on a Chicago Transit Authority bus. The Court tried the case without a jury and entered judgment for damages in the amount of $7500 against both defendants.
The Complaint was filed on August 19, 1966. It alleged that on November 22, 1965, plaintiff was a passenger for hire on the bus, which was proceeding in a southerly direction on Clark Street, at or near the intersection with Wacker Drive; that while plaintiff was walking towards the rear of the bus, it suddenly and without warning jerked, throwing him with great force against parts of the bus and resulting in injuries to him. Defendant's answer, filed on September 8, 1966, alleged in material part that the bus was not moving, but was "stopped standing."
On January 31, 1967, plaintiff filed a series of written interrogatories to defendant Smith. In his answer, the defendant stated that the occurrence specified in the complaint took place "On Clark, between Wacker and Lake."
The record also shows that pursuant to the suggestion that Benjamin Premack died on December 20, 1967, an order was entered substituting Joseph G. Robinson, Administrator of the Estate of Benjamin Premack, as plaintiff.
The defendants contend that the Court erred in refusing to permit Napoleon Smith to testify upon the basis of section 2 of the Evidence Act, (Ill. Rev. Stat. 1969, ch. 51, par. 2,) and in the alternative that the damages awarded to plaintiff were grossly excessive.
Irene Karrels, called as a witness by the plaintiff, testified that she boarded the bus at Clark Street and Wacker Drive. She said that a man paid his fare and walked past her on the bus. The bus then gave a sudden *130 violent jerk which raised her off her seat. She saw the man on the floor of the bus and heard him moan. She told the driver that the man was hurt and he quickly stopped the bus and came to the man's assistance. She placed the location of the bus at the time of the occurrence on Clark Street between Lake and Randolph. On cross-examination, she testified that the bus had moved a distance of almost a block before it jerked.
The defendant, Napoleon Smith, the bus driver, took the stand as a witness, but upon objection by plaintiff, he was barred from testifying under section 2 of the Evidence Act (commonly known as the "Dead Man's Act").
We first consider whether the Court improperly refused to permit Napoleon Smith to testify. The record reveals that at the trial plaintiff offered into evidence Interrogatory No. 8 which requested Smith to state "where the occurrence specified in the Complaint occurred." The defendant's answer to this interrogatory reads "On Clark, between Wacker and Lake." The defendants claim that this interrogatory is plaintiff's sole proof connecting the deceased with the man whom the witness Irene Karrels saw fall on the bus. We must reject this argument. It is clear from the pleadings that both parties proceeded to trial on the assumption that the plaintiff was on the bus driven by Napoleon Smith at the time he was injured. The defendants also stress that the allegation in their answer that the bus was "stopped standing" put into issue whether a moving bus had caused the deceased to fall. The defendants thus argue that by introducing the answer to the interrogatory into evidence, the plaintiff in effect called Napoleon Smith as his witness and thereby waived his right to urge Smith's incompetency.
The defendants seek to rely on the language of the first paragraph of Section 2 which bars a party from testifying where the opposite party is an administrator "unless when called as a witness by such adverse party." They advance the novel theory that by introducing the written answer given by the bus driver to plaintiff's interrogatory, plaintiff has in effect called Napoleon Smith as his witness and thereby waived his right to assert Smith's incompetency. They cite no case or statute to support this point, and we are unable to agree with it.
Defendants rely on Perkins v. Brown, 400 Ill. 490, 81 N.E.2d 207, wherein it is stated that, "The rule is that where a party, who is incompetent to testify for himself as to a transaction, is called as an adverse party and questioned concerning the same, he is thereby made competent to testify in his own behalf as to the whole of such transaction, although his incompetency is not removed as to other matters about which he was not interrogated by the adverse party." (p. 497.) In *131 that case, however, the plaintiff called Brown as an adverse witness to testify as to matters at issue in the case. The introduction of an answer to an interrogatory containing an admission of fact was not involved. The same is true of Chabat v. Kelly, 72 Ill. App.2d 150, 218 N.E.2d 868.
 1 The rule removing the disqualification of a witness when he is called by the protected party as an adverse witness applies only when he is called to testify as an occurrence witness. (Combs v. Younge, 281 Ill. App. 339.) If he is called for any purpose other than to testify as to material issues in the case, the disqualification is not removed. Thus in DeYoung v. Ralley, 329 Ill. App. 1, 67 N.E.2d 221, where the defendant in an action for personal injuries called the plaintiff as an adverse witness and interrogated her regarding her admission in a pretrial deposition that she had not seen the other car prior to the collision, the Appellate Court held that defendant's interrogation of the adverse witness solely in regard to the admission did not make her competent to testify generally in her own behalf. Similarly, in Merchants' Loan & Trust Co. v. Egan, 222 Ill. 494, 78 N.E. 800, where plaintiff introduced as an admission at trial defendant's testimony at a prior proceeding in Probate Court, the Court held that plaintiff had not "called" the defendant as an adverse witness so as to render him competent to testify on his own behalf. Likewise, in Garrus v. Davis, 234 Ill. 326, 84 N.E. 924, where the plaintiff in a will contest called a defendant beneficiary for the sole purpose of proving the genuineness of certain letters allegedly written by the witness to the testatrix, the Court held that the witness' incompetency was not thereby removed.
 2, 3 The same result is required by the Supreme Court Rules, Ill. Rev. Stat. 1969, ch. 110A. Defendants rely on Rule 213(f) which provides that answers to interrogatories may be used in evidence to the same extent as a discovery deposition. While the taking of a discovery deposition does not make the deponent the deposing party's witness (Pink v. Dempsey, 350 Ill. App. 405, 113 N.E.2d 334), in general, the introduction of that deposition into evidence at trial does. Supreme Court Rule 212(e), however, specifically excepts depositions proving an admission from the general rule. As defendant Smith's answer to Interrogatory No. 8 was an admission against interest, it is our conclusion that its introduction into evidence at trial did not make him plaintiff's witness. Therefore, plaintiff did not, by its introduction, waiver his right to assert the bar of Section 2 against defendant's later testimony on his own behalf.
The defendants raise as a second ground another and separate reason why Smith was a competent witness. When plaintiff called Dr. Shapiro, Premack's physician, defendants objected that if the doctor's testimony were admitted, then under Section 2 the defense should be allowed to *132 call Smith as a witness. The objection was overruled. The doctor testified that the patient informed him that on the previous day he had boarded a bus at Wacker and Clark; that as he was walking toward his seat, the bus started off with a violent jerk, causing him to be thrown against a post and to the floor; that following the occurrence he was taken to two hospitals, and that at the second hospital, his chest was taped and he was released. The doctor then related his findings on examination of the patient.
 4 It is undisputed that the doctor's testimony was admissible under a recognized exception to the hearsay rule. The underlying basis for allowing such testimony is that an injured party will not falsify to the physician from whom he seeks medical aid. Shell Oil Co. v. Industrial Com., 2 Ill.2d 590, 119 N.E.2d 224.
 5 The defendants argue that the admission of the doctor's testimony made Smith a competent witness. They seek to rely on the exception stated in the second paragraph of section 2 of the Evidence Act which recites:
"Second  When, in such action, suit or proceeding, any agent of any deceased person shall, in behalf of any person or persons suing or being sued, in either of the capacities above named, testify to any conversation or transaction between such agent and the opposite party or party in interest, such opposite party or party in interest may testify concerning the same conversation or transaction."
The defendants' contention does not conform to a literal reading of the words of the statute. The statute applies only to testimony by an agent regarding a conversation or transaction between himself and the opposite party or party in interest. In the instant case, however, the doctor, assuming for the moment that he was the agent of the deceased, testified to a conversation between himself and the deceased outside of the presence of the opposite party.
In Cunningham v. Central & Southern Truck Lines, 104 Ill. App.2d 247, 244 N.E.2d 412, the widow of the deceased Cunningham brought an action for wrongful death against Central & Southern Truck Lines, the owner of the truck, and against its driver, Shaver. At the time of the collision, Cunningham was driving his own truck and Montgomery, Cunningham's employee, was riding beside him. After Montgomery had testified, Shaver sought to testify under the exception in the second paragraph of Section 2. The Court conceded that Montgomery was Cunningham's agent at the time of the collision but refused to allow Shaver to testify on the ground that Montgomery had not testified to a transaction between himself and the opposite party (Shaver) as contemplated by the statute. The Court went on to say that, "It is only *133 when an agent testifies to a transaction between himself and the opposite party, that the opposite party may testify concerning the same transaction." (p. 256.)
In Plank v. Holman, 108 Ill. App.2d 216, 246 N.E.2d 694, an executrix in a wrongful death action successfully barred the eyewitness testimony of the opposite parties and then introduced testimony of an accident reconstruction expert. The Court recognized that the combination of the prohibitions of the Dead Man's Act with the admission of expert reconstruction testimony on behalf of the party asserting the benefits of the Act tends to be somewhat unfair to the party whose testimony is barred by the Act. The Court concluded nevertheless that, "it is clear, under existing law, that such testimony is favored and may not be a basis to remove the bar of the Dead Man's Act." (p. 227.)
The defendants cite several cases in an attempt to establish a more flexible construction of the second paragraph of Section 2. All of them are distinguishable from the case at bar. In Jacquin v. Davidson, 49 Ill. 82, an agent was called to testify regarding a transaction in which he had made a contract on behalf of the deceased with the opposite party for the purchase of corn, and in Marshall v. Karl, 60 Ill. 208, an agent, who had obtained a promissory note for deceased, testified regarding a conversation between deceased and the opposite party.
 6 It is doubtful in any case that Dr. Shapiro can be considered Premack's agent as that word is used in the second paragraph of Section 2. Defendants argue for a board interpretation of the word "agent." They rely on Black v. Texas Co., 247 Ill. App. 301, for the proposition that the word "agent" is not confined to situations in which one person is the agent of another in the legal sense. But in that case, the word "agent" did not appear in the context of paragraph two or in fact in the context of any statute. The relevant interpretation of the word "agent" for purposes of the instant case must look to its use in the second paragraph of Section 2. The fact that the word may have a broader meaning in other contexts does not change its meaning under thet Act. Defendants cite no case in which a doctor has been allowed to testify as an agent of a deceased under the second paragraph of Section 2. In each case cited by defendants the purported agent was in fact the deceased's agent for the transaction at issue in the case and not merely, as here, his agent for making a declaration at trial. Thus we are satisfied on this ground too that the Court correctly ruled that Section 2 should not be abrogated and that the doctor's testimony did not remove the bar of the Dead Man's Act.
The defendants also contend that the award of $7500 was grossly excessive. They argue that there is no evidence of loss of earnings or hospital *134 bills and that the plaintiff's doctor bills amounted to only $365. Dr. Shapiro examined plaintiff on November 23, 1965. He testified that X-rays revealed fractures of the right 6th, 7th, 8th, 9th, 10th, 11th and 12th ribs. He explained that the fractures were not regular, but that the bones were out of line. In addition, he found a contusion of the right rib cage, strain of the muscles of the thoracic region of the spine, strain of the lower part of the right side of the back, strain of the lumbar region and sprain of the left knee. The doctor testified that the injuries were traumatic in origin due to external or traumatic force and could have been brought on within a short period of time before he saw Premack. He also testified that the conditions described above could cause pain and restricted breathing, symptoms of which Premack complained. Dr. Shapiro's treatment of Premack included infra-red treatments, short wave dithermy and massages. On March 12, 1966, the day on which he dismissed Premack, the doctor found evidence of residual symptoms of pain and restricted breathing. These symptoms, in his opinion were permanent in character.
 7 Defendants contend that the award of damages should be based upon a consideration of medical expenses, loss of earnings and pain and suffering. They argue further that the rough standard for determining the amount of the award is three times the amount of medical expenses plus loss of earnings, absent proof of acute suffering or permanent injury. Although defendants contend otherwise, we believe that the trial judge, in assessing damages, may properly have concluded that the elements of acute suffering and permanent injury were present in this case. In addition, the trial judge may properly have considered the nature and extent of the injury as a separate element of compensable damages. Donk Bros. Coal Co. v. Thil, 228 Ill. 233, 81 N.E. 857.
 8-10 We have repeatedly held that damages awarded to a plaintiff in a personal injury case will not be set aside unless palpably excessive. (Holsman v. Darling State Street Corp., 6 Ill. App.2d 517, 128 N.E.2d 581.) In Westis v. Aughinbaugh, 6 Ill. App.2d 94, 126 N.E.2d 865, appellant contended that a verdict of $8750 was grossly excessive because plaintiff's doctor bill was only $700, he was out of work only a short time and he was advanced in years. The Appellate Court affirmed the verdict, stating that, "With the exception of the money actually paid out by the plaintiff for hospital and doctor bills, there is no exact way of fixing the damage that the plaintiff sustained." (p. 101) The Court took into consideration the plaintiff's earning capacity and the pain and suffering that he had endured, and would endure in the future, and said, "after considering all of these elements, it is for the jury to say what the damages really are." (p. 101) The same principles are applicable to the *135 instant case. The evidence discloses that plaintiff incurred fractures of seven ribs with displacement, strains of the back, a sprain of the left knee and residual symptoms of restricted breathing and pain of a permanent nature. The question of damages is peculiarly one for the trier of facts, which can consider the nature and extent of the injuries, pain and suffering and the permanency of the injuries as well as medical expenses and loss of earnings. We are of the opinion that the damages awarded are not excessive. For the reasons stated the judgment is affirmed.
Judgment affirmed.
ADESKO, P.J., and DIERINGER, J., concur.